168 So.2d 270 (1964)
STATE of Louisiana ex rel. Albert BALLETT, Jr., Plaintiff-Appellant,
v.
Lionel GREMILLION, Administrator, etc., Defendant-Appellee.
No. 1292.
Court of Appeal of Louisiana, Third Circuit.
October 27, 1964.
Rehearing Denied October 29, 1964.
Writ Refused December 17, 1964.
Bass & Lawes, by Eugene H. Lawes, Lake Charles, and Porter, Scofield & Cox, by James J. Cox, Lake Charles, for plaintiff-appellant.
Lionel Gremillion, in pro. per., Frank T. Salter, Jr., Lake Charles, for defendant-appellee.
En Banc.
PER CURIAM.
This is an appeal from the District Court's denial of a writ of habeas corpus. The facts that give rise to this appeal are as follows:
Albert Ballett, Jr., was charged with the murder of his common-law wife. After trial, on January 17, 1964, the jury returned the verdict of not guilty by reason of insanity. Pursuant to LSA-R.S. 15:270 *271 (Code of Criminal Procedure), which states:
"Any person charged with an offense for which the penalty is or may be capital punishment who, upon trial, is found not guilty by reason of insanity or mental defect shall be committed by the judge to a state mental institution. No person so committed shall be released from the state mental institution except upon the order of the same court which ordered his commitment based upon determination that such person is no longer criminally insane or a menace to society",
the District Judge ordered Ballett confined to the Louisiana Hospital for the Criminally Insane at Jackson, Louisiana.
Approximately four and one-half months later, Ballett filed a petition for a writ of habeas corpus on the ground that he was no longer insane. The District Court denied the writ. Ballett appeals to this court.
The threshold question to be decided is whether this court has appellate jurisdiction to review the denial of the writ of habeas corpus under these circumstances.
The appellate jurisdiction of the courts of appeal is expressly limited by the constitution to civil and probate matters. Article 7, Section 29, Louisiana Constitution of 1921, LSA.[1]
On the other hand, the Supreme Court has appellate jurisdiction of criminal cases "in which the penalty of death or imprisonment at hard labor may be imposed, or in which a fine exceeding three hundred dollars or imprisonment exceeding six months has been actually imposed." Article 7, Section 10(5), Louisiana Constitution. Because of this limitation as to criminal appeals, the Supreme Court does not have appellate jurisdiction of the denial of writs of habeas corpus questioning commitment because of a crime, State ex rel. McIsaac v. Sigler, 236 La. 773, 109 So.2d 89, the only remedy being by supervisory writs, State ex rel. Cox v. Clemmons, 243 La. 264, 142 So.2d 794.
Counsel argues that the relator Ballett has been acquitted of being guilty of any crime and that his commitment should therefore be regarded as a civil matter reviewable by the intermediate appellate courts, as are other civil habeas corpus decisions.
As a civil matter, habeas corpus is one of the "extraordinary" remedies regulated by Title III of Book 7 of the Louisiana Code of Civil Procedure, LSA-C.C.P. Arts. 3781 et seq. In the Official Reporter's "Introduction" to the Title, it is noted that "R.S. 15:113 through 15:141, which govern the issuance of habeas corpus in criminal matters, are not affected by the provisions in this Title." In the Official Reporter's "Preliminary Statement" to Chapter 2 of the Title, which chapter regulates the civil habeas corpus action, LSA-C.C.P. Arts. 3821 et seq., it is noted that the civil procedure articles regulate the use of the writ of habeas corpus in civil proceedings only, and that "The articles in the Code of Criminal Procedure regulate the use of the writ where the applicant is confined as a result of a criminal proceeding against him." (Italics ours.) It is appropriate and proper for the courts to use these official Law Institute comments in the interpretation and construction of the provisions of the *272 Code of Civil Procedure. Emmons v. Agricultural Ins. Co., 245 La. 411, 158 So.2d 594.
In the present instance, the relator Ballett was confined as a result of a criminal proceeding brought against him, such confinement being by virtue of LSA-R.S. 15:270 of the Code of Criminal Procedure. Criminal proceedings are regulated by the Code of Criminal Procedure, which is contained as Title 15 of the LSA-Revised Statutes. This title includes regulation of the issuance of writs of habeas corpus to secure the release of those imprisoned by virtue of criminal proceedings. LSA-R.S. 15:113-15:141.
Thus, although the present is denoted as a civil proceeding, it seeks habeas corpus review where the relator has been committed through criminal process. The only habeas corpus provisions available, therefore, are those contained in the Code of Criminal Procedure, LSA-R.S. 15:0.1 et seq.
As previously noted, the courts of appeal such as the present do not have appellate jurisdiction of criminal cases, nor of proceedings under criminal law. Similarly their supervisory jurisdiction is limited to "cases in which an appeal would lie to the court of appeal", Article 7, Section 29, Louisiana Constitution; which are civil cases only. Consequently, in our view, the trial court's dismissal of these habeas corpus proceedings can be reviewed only by the supervisory jurisdiction of the Supreme Court. State ex rel. Cox v. Clemmons, cited above.
In the case of In re Ingram, La.App. 1 Cir., 82 So.2d 788, it was recognized that in a commitment under criminal jurisdiction a court of appeal does not have original jurisdiction to issue writs of habeas corpus, since the appellate jurisdiction of the court of appeal does not extend to criminal cases. 82 So.2d at 790, Footnote 1. Although appellant relies upon language in the Ingram case indicating that the courts of appeal do have appellate jurisdiction over habeas corpus proceedings, the Ingram case actually concerned only a habeas corpus proceeding pursuant to a civil commitment order under LSA-R.S. 28:53, and the language therein must be understood in that context.
In summary, therefore, since Ballett's confinement under LSA-R.S. 15:270 was automatic upon his acquittal by reason of insanity, his incarceration was a result of a criminal proceeding over which the court of appeal has no jurisdiction. His appeal to this court must be dismissed rather than transferred, since likewise the Supreme Court does not have appellate jurisdiction.
This appeal from the District Court's denial of the writ of habeas corpus is therefore dismissed, without prejudice to Ballett's right to apply to the Supreme Court for supervisory or other writs within 30 days after this judgment becomes final in this court.
Appeal dismissed.
TATE, J., concurs additionally and assigns written reasons.
TATE, Judge (concurring).
The writer agrees that this court does not have appellate jurisdiction and therefore cannot review the dismissal of Albert Ballett's petition for a writ of habeas corpus. I feel obliged, however, to call to the attention of further reviewing courts that the present is not one of the run-of-the-mill habeas corpus cases now flooding the appellate and the federal courts, in which the relator has previously had a full opportunity to litigate his contentions that he is being wrongfully incarcerated.
To the contrary, the present is the sort of a situation involving fundamental liberties which the writ of habeas corpus was specifically designed to provide relief for.
Here is a man acquitted, by reason of temporary insanity, of guilt for a crime of passion committed some 2½ years ago, *273 who is now completely sane and who would be released, according to the psychiatrists, from confinement if he had been committed under any other statute of Louisiana than the one presently involved. Here is a man brought to the criminally-insane ward some nine months ago, without benefit of any psychiatric diagnosis whatsoever but by automatic operation of a statute upon the jury's acquitting him of a crime because of his temporary insanityhere is a man who may spend the rest of his days under the terrifying and overcrowded conditions of a ward for the criminally insaneand yet no psychiatrist would ever have recommended his confinement in the first place, nor would any recommend the continuation of his confinement now, according to the uncontradicted expert testimony in the record.
The circumstances are that Ballett, a 37-year old Negro who had never committed such a violent crime in his life before, killed his common-law wife in a fit of rage after a prolonged bout of drinking. The jury found him not guilty by reason of insanity. Prior to 1960, Ballett would then have been released, unless psychiatric examination indicated that his confinement was desirable. However, by Act 509 of 1960, enacting LSA-R.S. 15:270, it was provided in such circumstances that the acquitted person must automatically be confined to a mental institution and shall not be released unless it be determined that "such person no longer is criminally insane or a menace to society." (Italics mine.)
The psychiatrist and the psychologist testifying both were positive that Ballett was not criminally insane nor dangerous. They did feel that he had a personality defect of being unstable, as are many millions of people outside institutions, and that he might be inclined to get into fights if he drank. He did not have hostile attitudes, nor was he inclined toward violence. As the psychiatrist stated, "He is just a colored person who might get mad and might go out and start drinking and get in a fight. That's what he is. There are a lot of them on the outside." Tr. 52.
Both of these experts thought the best form of release would be for Ballett to have outpatient treatment every month or so, more to make certain he did not take up drinking. However, both, as I understand their testimony, definitely felt that Ballett should be released rather than continued in confinement, even if the release could not legally be conditioned upon such outpatient treatment.
The difficulty, from the trial court's point of view, was that the expert witnesses were positive that Ballett would not be a danger to society if releasedfrom the point of view that it was very, very remote that the precise juxtaposition of events and his personality and alcohol might cause him to do harm again; but nevertheless these experts felt it was an impossibility for them to certify that he could in no circumstances be a "menace to society", which they felt to be a non-medical phrase. The medical experts pointed out that this phrase is so vague and so broad as perhaps to require confinement of persons with heart trouble who might drive an automobile (and thus be a menace to society in that they might have a heart attack while driving), or, for example, even of people of unpopular religious or political beliefs which others felt might be a menace to their own cherished views of society. Both of these experts stated that they would experience no hesitation themselves in hiring Ballett or in having him work around their homes and their wives and children.
Some of us may perhaps feel that Ballett killed a person and no tears should be wasted on him. The point is, Ballett was acquitted of any crime in the matter, and supposedly he is being confined not as a punishment, but to aid in his rehabilitation and to prevent his endangering society again. However, the uncontradicted medical testimony is that he is not dangerous and is fully sane and that no treatment is needed. As a matter of fact, the psychiatrists feel his mental health and sanity might be endangered by continued confinement in the hell-hole of a ward for the *274 criminally insane, where some 185 inmates are confined in space designed for 70, with room barely to turn around between cots, with no outside recreational facilities at all, with violent and really insane inmates supervised by insufficient prison personnel, so much so that at night the prison attendants are afraid to enter the criminal wards, so dangerous a journey it is. And yet an innocent and sane person is being required to stay in such surroundings indefinitely, with no really adequate adjudicative procedures or legislative standards to test his right to release.
Fundamentally, I think that such confinement under the statutory provisions in question raises serious constitutional questions, and the situation is compounded by the lack of an adequate practical procedure for judicial adjudication and review of proceedings relating to the release of one confined in a criminally insane ward by reason of such a statute. (We should point out that the Supreme Court's review by supervisory writs is normally limited to the pleadings and written ruling of the trial court and does not normally involve a review of the actual evidence in the record which allegedly does not justify the trial court's ruling.)
When the automatic commitment was adopted by Act 570 of 1960, Professor Dale Bennett, noted Louisiana authority on criminal law, pointed out that the act is deficient in not providing more adequate release provisions if the defendant becomes sane. Bennett, Legislative SymposiumCriminal Law and Procedure, 21 La.L.Rev. 66, 73 (1960). As Professor Bennett there stated, "The American Law Institute commitment rule is followed by comprehensive provisions as to a subsequent determination of the defendant's fitness to return to society, and provisions for safeguarding society, by a system of probation, against dangers from a possible reoccurrence of the mental instability. The procedures of Louisiana's general mental health law will scarcely suffice in these regards." 21 La.L.Rev. 73.
There is a genuine problem here of whether Albert Ballett, acquitted of any crime, has any adequate remedy to afford him a full-scale judicial review of the legality of his continued confinement, if it was constitutional in the first place.
The able court-appointed attorneys went far beyond the call of their duty in doing their best to afford Ballett a remedy. They deserve the commendation of the entire legal profession and of the courts of Louisiana for their public interest in bringing to light the problem of Ballett and those similarly situated. It is a problem which has a crying need for full judicial review of the merits and of the constitutionality of Ballett's continued confinement.

On Application for Rehearing.
En Banc. Rehearing denied.
NOTES
[1] "Any provision of this Constitution or law to the contrary notwithstanding, the courts of appeal have appellate jurisdiction of the following cases of which the Supreme Court is not given appellate jurisdiction under Article VII, Section 10 of this Constitution; all matters appealed from the family and juvenile courts, except criminal prosecutions against persons other than juveniles; all civil and probate matters of which the district courts throughout the state have exclusive original jurisdiction; and all civil matters involving more than one hundred dollars, exclusive of interest, of which the district courts throughout the state have concurrent jurisdiction. * * *"