355 So.2d 643 (1978)
Mrs. Lillian Schon SMALL
v.
S. (Samuel) Sanford LEVY, presently sitting as Judge, Division "D", of the Civil District Court for the Parish of Orleans, State of Louisiana.
No. 8989.
Court of Appeal of Louisiana, Fourth Circuit.
February 27, 1978.
Rehearing Denied March 1, 1978.
Writ Refused May 5, 1978.
Glenn L. Morgan, New Orleans, for plaintiff-appellant.
Darleen M. Jacobs, New Orleans, for defendant-appellee.
Before SAMUEL, REDMANN, LEMMON, GULOTTA, STOULIG, BOUTALL, SCHOTT, BEER and HUFFT, JJ.
PRESTON H. HUFFT, Judge ad hoc.
Plaintiff, appearing alone and solely in her capacity as a citizen and not as a claimant to the office, brought this application for a Writ of Quo Warranto under LSA-C.C.P. *644 Art. 3901 to direct the defendant, a duly elected and sitting judge of the Civil District Court for the Parish of Orleans, to show by what authority he was holding public office. Plaintiff alleged the defendant was past the age of 75 and Article 7, § 8 of the Constitution of 1921, which was controlling with respect to the defendant, provided for compulsory retirement at the age of 75. The defendant filed an exception of no right of action contending the plaintiff did not have the right to bring the action alone and solely in her capacity as a citizen. On the merits, the defendant admitted he was past the age of 75 but contended that the provisions of Article 7, § 8 of the Constitution of 1921 permitted him to serve until he reached the age of 80.
The district court referred the exception of no right of action to the merits and on the merits found that the defendant was permitted to serve until he reached the age of 80 under paragraph (b) of Article 7, § 8 and dismissed the Writ of Quo Warranto. The plaintiff appealed this dismissal.
During oral argument before this court, counsel for the defendant waived the exception of no right of action and expressed the defendant's desire to have this court decide the issue on the merits. Assuming this oral request constituted a waiver of the exception of no right of action, this court on its own motion under the provisions of LSA-C.C.P. Art. 927 raises the right of the plaintiff to bring this action. We recognize that the defendant wishes to have the matter decided in this proceeding on the merits, since his right to hold office is under attack but for this court to permit a litigant, who does not possess the right, to bring an action such as this against a public officer would in the future place every public officer, who put at issue the right of a plaintiff to bring such an action, in the position of appearing reluctant and hesitant to defend his right to office on the merits. No public officer should be put in that position. If the litigant does not possess the right to bring the action, he should not be permitted to do so. This brings us to the threshold issue in this case does the plaintiff possess the right to bring the action?
This exact question was presented to this court in Lelong v. Sutherland, La.App., 134 So.2d 627 (1961), and the court in the following language, on pages 629 and 630, held that a litigant appearing alone and solely as a citizen did not possess the right to bring an action testing the right of a public officer to hold office:
"Defendants first challenge plaintiff's right, solely as a taxpayer or citizen, to institute this suit, contending that the right to try title to public office is governed exclusively by LSA-R.S. 42:77, as follows:
LSA-R.S. 42:76
'An action shall be brought in the name of the state in any of the following cases;
'(1) When any person usurps, intrudes into, or unlawfully holds or exercises or attempts to remain in possession of any public office or franchise within this state.
* * * * * *
'This action shall be brought by the attorney general of the state or by the parish district attorney of the parish in which the case arises against the offender, and the suit shall be filed in the district court of that parish.
'The action may also be brought by the governor appearing in proper person or through the attorney general of the state or other counsel he may select.'
LSA-R.S. 42:77
'In the cases provided in R.S. 42:76(1) and 42:76(2), the action may be brought by any person demanding possession of the office against any person claiming or exercising the functions of the office.'
On the other hand, counsel for plaintiff urges that LSA-C.C.P. Art. 3901, Chapter 4, verbo `Quo Warranto,' which reads as follows, authorizes this proceeding:
'Quo warranto is a writ directing an individual to show by what authority he claims or holds public office, or office in a corporation, or directing a corporation to show by what authority it exercises certain powers. Its purpose is to prevent usurpation of office or of powers.'

* * * * * *
*645 The Intrusion into Office Statute makes it clear that a taxpayer, as such has no standing to challenge the right of an incumbent to hold and perform the duties of such public office. LSA-C.C.P. Art. 3901, Chapter 4, under `Quo Warranto,' might appear to give such authority. While there is nothing in the text of Art. 3901 to justify such conclusion, the editorial comment under the Article (par. b), explains that the provision referring to `public office' was incorporated on the theory that the Intrusion into Office Act does not give an individual the right to file suit except when he is claiming the office.

* * * * * *
The Intrusion into Office Statute is a special statute, limiting to those named the right to challenge incumbents of public office to hold and exercise the duties of such office. LSA-C.C.P. Art. 3901 is a general procedural statute defining the character of a writ of `Quo Warranto,' and establishes an immediate, direct, adequate and speedy remedy only for those who, by substantive law, have the right to challenge public and private corporate officers in their right to hold and perform the duties of such office.
Where there is an apparent conflict between a general law and a special law on the same subject, the special law must prevail in the particular matter to which it applies, and even though the general law has been enacted subsequent to the enactment of the special law, the special law is not thereby repealed by implication; and is only affected if reference is made to it expressly. Hewitt v. Webster, La.App., 118 So.2d 688, and authorities therein cited.
Plaintiff, then, appearing as a taxpayer only, without any claim to the office challenged, has no right to remedy; hence, has no right of action herein."
Under Lelong, it is clear that the plaintiff has no right of action herein. However, plaintiff, in her brief and in oral argument, urged this court to overrule Lelong for the following reasons:
(1) that the Lelong court in arriving at its decision did not consider the holding of the Supreme Court in Slater v. Blaize, 204 La. 21, 14 So.2d 872 (1943);
(2) that the Lelong court was not aware of the legislative history of quo warranto in general and the quo warranto provisions in the Code of Civil Procedure in particular;
(3) that in Aucion v. Spencer, 135 So.2d 105, La.App., (1961), and Tabor v. Siracusa, La.App., 135 So.2d 121 (1961), which were decided about the same time as Lelong, quo warranto was recognized as a proper procedure to test the right of a public officer to hold or exercise office;
(4) that the Lelong decision denied a citizen access to the courts and violated his right to due process under the 14th Amendment to the Constitution of the United States.
Because some members of this court feel to the contrary with respect to Lelong, we will consider the foregoing contentions:
(1) Slater v. Blaize, supra, had no bearing on the decision reached in Lelong. The Slater decision although refusing the application as being moot since the injunction proceeding was dismissed prior to the filing of the application contained the following language:
"Under the express provision of our law, the proper procedure in cases where the person claiming title to an office is not in actual possession thereof is by quo warranto or intrusion-into-office proceedings (Article 867, etc. of the Code of Practice and Section 2593, etc., of the Revised Statutes, as amended by Act No. 102 of 1928) * * *." 14 So.2d at p. 872. (emphasis ours).
Before C.C.P. Art. 3901 an individual claiming title to "an office" had a right to bring either a quo warranto or an intrusion into office proceeding depending on the nature of "the office". Articles 867 and 868 of the Code of Practice of 1870 pertaining to Quo Warranto provided as follows:
"This is an order rendered in the name of the State by a competent court, and directed to a person who claims or usurps *646 an office in a corporation, inquiring by what authority he claims or holds such office." Art. 867.
"This mandate is only issued for the decision of disputes between parties in relation to the offices in corporations, as when a person usurps the character of Mayor of a city, and such like.
With regard to offices of a public nature, that is, which are conferred in the name of the State by the Governor, with or without the consent of the Senate, or by election, the usurpations of them are prevented and punished in the manner directed by special laws." Art. 868.
Lelong is in agreement with Slater and further recognizes that since C.C.P. Art. 3901 a person claiming title to a "public office" may bring either a quo warranto or an intrusion into office proceeding such a person possesses the substantive right to bring the action and may select the procedural device he wishes.
(2) The Lelong decision recognized the history of the common law writ of quo warranto and the presence of the writ in the Codes of 1825 and 1870 but it recognized also that since Act 156 of 1868 there has been in existence a "special law" relative to the testing of the right of an individual to hold or exercise a public office the Intrusion Into Office Statute. Section 11 of Act 156 provided as follows:
"That all laws or parts of laws in this State touching on the subject of quo warranto, conflicting directly or indirectly with any of the provisions of this act, be and the same are hereby repealed."
Act 156 became Sections 2593-2605 of the Revised Statutes of 1870 and has remained unchanged to the present except for its amendment by Act 102 of 1928, which, if anything, made the statute even more special in nature. Prior to the Code of Civil Procedure, the courts consistently recognized that the testing of the right of an individual to hold or exercise a "public office" was governed by the Intrusion Into Office Statute.
For the very first time, Art. 3901, in very general terms, defined quo warranto as a writ directing an individual to show by what authority he claimed or was holding "public office". Art. 3901 provided another procedural device for testing the right to hold "public office" either the ordinary proceedings of the Intrusion Into Office Statute or the summary proceedings of Quo Warranto. Lelong merely held that either of these two procedures would be available provided the individual bringing the action possessed the substantive right to so proceed. The general provisions of Art. 3901 cannot be construed as repealing the special provisions of the Intrusion Into Office Statute. While the Lelong court recognized that the official Law Institute Comments may be used in interpreting and construing the provisions of the Code of Civil Procedure, see Emmons v. Agricultural Insurance Company, 245 La. 411, 158 So.2d 594 (1963) and State v. Gremillion, La.App., 168 So.2d 270 (1964), it did not hold that an official comment may be considered as positive legislation repealing a special statute that has been a part of the statutory law of Louisiana for 100 years. Neither do we.
(3) The Court in Aucion and Tabor did not make any comment whatsoever as to the right of an individual acting alone and in his capacity as a citizen to bring a summary procedure under Art. 3901 to test the right of a public officer to hold and exercise public office in fact, Art. 3901 is not specifically mentioned or referred to in either decision. Each case was a quo warranto proceeding but the issue never arose as to the substantive right to bring such an action. In Tabor no question was raised as to the right of the individual to bring the action and in Aucion the plaintiff filed an Exception of No Right or Cause of Action but it was referred to the merits by the District Court and was not discussed in any way in the decision handed down. Tabor and Aucion merely hold that if the substantive right to bring an action to test the right of a public officer to hold and exercise public office is not pursued by the defendant and the exception is not raised by the court on its own motion, the court may decide the matter on the merits. This does *647 not do violence to Lelong and in fact, in the instance before this court, if the court did not raise the right of the plaintiff to bring the action, we would proceed to decide the case on the merits.
(4) Lelong does not violate the due process provisions of the 14th Amendment. In its wisdom, the Legislature has granted the substantive right to test the right of a public officer to hold public office to the Attorney General, the District Attorney of the parish where the case arises, the Governor appearing in proper person or through the Attorney General or other counsel he may select or an individual who is claiming the office. The limitation of the substantive right, as enunciated above, prevents a citizen from rushing to the courthouse to file an action testing the public officer's right to hold public office, every time the citizen is aggrieved by a decision made by the public officer in the performance of his duties. However, this does not deny the individual citizen access to the courts to test the right of a public officer to hold office. An individual, acting alone and in his capacity as a citizen, may file a mandamus proceeding against the Attorney General or the appropriate District Attorney to compel said officer to file the action to test in accordance with his responsibility under the Intrusion Into Office Statute. These legal officers represent the interest of all citizens with regard to the right of a public officer to hold office and under the proper circumstances, mandamus will lie. Thomas v. Fuller, 166 La. 847, 118 So. 42 (1928) and State ex rel Kilbourne v. Dugas, La.App., 180 So.2d 440 (1965).
For the reasons assigned, we hold the plaintiff has no right of action and, accordingly, her suit is dismissed. Plaintiff is to pay costs in both courts.
AFFIRMED.
GULOTTA, BOUTALL and BEER, JJ., concur with written reasons.
STOULIG, J., would dismiss appeal and assigns written reasons.
LEMMON, J., with whom REDMANN and SCHOTT, JJ., join, dissenting.
GULOTTA, Judge, concurring.
I concur in the result affirming the trial court's dismissal of plaintiff's suit.
Although a liberal construction of pleadings is favored to afford a litigant his day in court,[1] nevertheless, plaintiff's suit is not one in "Quo Warranto". LSA-C.C.P. art. 3901. This article provides a party the right to question "by what authority" one holds office. In our case, Judge Levy's authority is his commission issued after having been duly elected. Judge Levy is not without authority to hold office.
Plaintiff's complaint is that the judge has remained in office beyond the mandatory retirement age. This complaint comes within the provisions of LSA-R.S. 42:76, the intrusion in office statute. The Attorney General or the District Attorney is the proper party to bring this action. A citizen, moreover, may mandamus the appropriate law enforcement officer to bring the suit. See State ex rel. Kilbourne v. Dugas, 180 So.2d 440 (La.App. 1st Cir. 1965).
BOUTALL, Judge, concurring.
I concur in the affirmance of the judgment appealed and in the dismissal of the plaintiff's suit on the exception of no right of action on the basis of Lelong v. Sutherland, 134 So.2d 627 (La.App. 4th Cir. 1961) and the opinions expressed by Judges Hufft and Samuel. However I am troubled by the apparent waiver of that issue in argument before us. For that reason I feel compelled to address myself to the merits of the case as an additional reason for affirming the trial court.
This quo warranto proceeding questions the right of Judge Samuel Sanford Levy to continue in office as Judge, Civil District Court for the Parish of Orleans, beyond the age of 75 years under the provisions of La. Constitution of 1921, Art. 7 § 8. Plaintiff, *648 Mrs. Lillian Schon Small, appeals from a judgment dismissing her suit. On this appeal there are no procedural issues presented, the relevant facts are not in dispute, and the issue is solely one of law.
Judge Levy's service as judge began in 1964, and he has continuously served as a judge of a court of record to date, his last reelection being in 1972 for a term ending December 31, 1984. The pertinent law covering his service is Art. 7 § 8 of the Constitution of 1921 which had been amended by Acts 1960, No. 592, adopted Nov. 8, 1960, stating in part:
"§ 8 (a) The provisions of this section shall apply to judges of the Supreme Court, the Courts of Appeal, District Courts, including the Civil and Criminal District Courts for the Parish of Orleans, City Courts, Municipal Courts and Traffic Courts which are courts of record, and Juvenile and Family Courts.
"The term `Judge' as used hereinafter in this section, means a judge of one of the courts to which this section is applicable.
"(b) Every judge shall retire upon reaching the age of 75 years. If he has served as judge of a court of record for 20 years, he shall receive full pay for life.
"However any judge now serving who, on attaining the age of seventy five years, has served less than twenty years, may remain in the service until he has served for twenty years or until he has attained the age of eighty years, whichever shall occur first and shall then retire. If he has served for twenty years he shall receive full pay for life and if he has served for less than twenty years he shall receive that proportion of his pay which the number of years served on a court of record bears to twenty."
The Constitution of 1921 has now been superceded by the Constitution of 1974. Although the mandatory retirement age has been lowered to seventy, the retirement benefits and judicial service rights of Judge Levy under the 1921 Constitution are still in effect. Article 5 § 23 of the 1974 Constitution states:
§ 23. Judges; Retirement
"Section 23. (A) Retirement System. Within two years after the effective date of this constitution, the legislature shall provide for a retirement system for judges which shall apply to a judge taking office after the effective date of the law enacting the system and in which a judge in office at that time may elect to become a member, with credit for all prior years of judicial service and without contribution therefor. The retirement benefits and judicial service rights of a judge in office or retired on the effective date of this constitution shall not be diminished, nor shall the benefits to which a surviving spouse is entitled be reduced.
"(B) Mandatory Retirement. Except as otherwise provided in this Section, a judge shall not remain in office beyond his seventieth birthday."
Judge Levy reached his 75th birthday on January 27, 1977, but his term does not expire until December 31, 1984. Referring to Art. 7 § 8 quoted above, it is readily seen that he is beyond the mandatory retirement age stated in the first paragraph of Subsec. (b) unless he is able to continue in office under the provisions of the second paragraph. It is equally apparent (and this is the point of contention here) that the exception provided in the second paragraph is dependent upon the meaning of the words "now serving" in the first line. Without these words, the exception clearly applies to Judge Levy.
Appellant contends that we should restrict the meaning of "now serving" to only those judges who were serving at the effective date of the approval of the amendment. I disagree for several reasons.
Under our system of law, a new law or an amendment to an existing law does not have retrospective effect on substantive matters. Its provisions are contemplated to take effect at its effective date and to control its substantive matters during its existence until it is amended or repealed. See C.C. Art. 8, R.S. 1:2, Const.1921, Art. 4 § 15 and Art. 1 § 2, Const.1974, Art. 1 §§ 2 and 23. It is not limited in time unless it plainly says so.
*649 Words used in our laws are to be given their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words. C.C. Art. 14. Similarly R.S. 1:3 requires words to be construed according to the common and approved usage of the language. The most common usage of "now" is as an adverb meaning "at the present time". See Webster's Third New International Dictionary, Unabridged, 1971 Ed.
Considering these factors, the phrase "judge now serving" means a judge in office during the effective period of the law at whatever point in time the law is referred to. To limit the meaning of "now" to mean only November 8, 1960, the date of approval; only December 18, 1960, the effective date; or any other particular past date is to restrict its meaning from "at the present time" to "at some particular time". Can anyone say that Mr. Carter is not "now serving" as President of the United States, or that any member of this court is not "now serving" today as well as when this case was heard?
The only way in which we can limit the meaning of "now serving" to "serving at the effective date of this law" is by judicial legislation, that is, by adding words to the law that the legislature did not add. Unless we should supply some additional words, we would have a confused time frame. Would "now serving" mean at the time the legislature passed the act, or the time the electorate approved it, or the time the constitutional amendment was promulgated and became effective? When the legislature intends to attach such a retrospective effect to an act or to limit its effect to a particular time it says so. We have no further to look than the constitutional article which succeeded this one, Art. 5 § 23, supra. Note the limitations: "Within two years after the effective date"; "a judge taking office after the effective date"; "a judge in office at that time"; "a judge in office or retired on the effective date". Can they be equated to "any judge now serving"? Certainly not.
I conclude that "any judge now serving" means simply what it says, a judge who is serving during the present period the law is in effect, from its first effective date forward. If further support for this proposition is needed, it is found in the recent case of Swift v. State, 342 So.2d 191 (La.1977) which involved the interpretation of a statute in relation to these same two constitutional provisions and which affirmed the principle that pension statutes must be liberally construed in favor of the intended beneficiaries. I find no confusion or inconsistencies in the constitutional sections pertinent here. To limit the meaning of the law as urged by appellant would require us to abandon that rule of liberal construction. "No compelling reasons are offered for us to adopt that stance." 342 So.2d 196.
An additional reason for liberal interpretation in favor of appellee is the restrictive nature of the constitutional requirement that an elected officeholder is thus required to retire from office before he fulfills the term for which he was elected. No other elected official in this state is required to resign his office solely on the basis of attained maximum age. It is not my purpose here to raise any federal constitutional questions of discrimination or unfairness, but simply to point out that one of our fundamental constitutional precepts expressed in that same Constitution of 1921, Art. 7 § 40, is that no elected judge shall be affected in his term of office, except as otherwise provided in that Constitution. This justifies liberal interpretation.
I conclude that Judge Levy comes within the exception to the mandate of retirement at age 75 and is not now required to retire; accordingly, I would affirm the judgment appealed.
BEER, Judge, concurring.
I respectfully concur in the result reached in the opinion of Boutall, J., being of the view that the quo warranto proceeding, which is an extraordinary proceeding, prerogative in nature [see Black's Law Dictionary 1417 (4th ed. 1951)], entitled Honorable S. Sanford Levy to a liberal construction of *650 the term "judge now serving." Though I do not share Judge Boutall's view in a general sense with respect to this phrase, I do perceive that a liberal interpretation thereof supports affirmance of the trial court's judgment.
STOULIG, Judge, would dismiss appeal and assigns written reasons.
This is an appeal from a judgment dismissing the quo warranto proceeding filed by appellant, Lillian Schon Small, to remove appellee, Judge S. Sanford Levy, from the office of district judge, Civil District Court for the Parish of Orleans. Appellant's action is based upon the premise that appellee is over 75 years of age and is constitutionally mandated[1] to retire.
For the reasons stated later, neither this court nor the district court has jurisdiction to entertain this proceeding. Jurisdiction vests initially and exclusively in the Supreme Court of the State of Louisiana and its investigative arm, the Judiciary Commission.
Quo warranto by definition requires the individual against whom it is directed to "show by what authority he claims or holds public office." Obviously Judge Levy's authority is the commission issued to him by the Governor of the State of Louisiana attesting to the fact that he was duly elected to the office of district judge for a term as fixed by law. Judge Levy was re-elected in 1972 for a 12-year term ending on December 31, 1984. Appellant by pleading these facts of both the election and term of office has judicially acknowledged the authority by which Judge Levy claims or holds his office. Unquestionably the writ of quo warranto has been satisfied.
As I view the appellant's pleadings she does not question the right or authority by which Judge Levy acquired the office but contests his right to remain in office. In substance she contends that Judge Levy is in violation of La-Const.1921 Art. 7, § 8 as amended in 1960 by refusing to retire. Her contention is then directed to Judge Levy's inaction and therefore her complaint addresses itself to the Judiciary Commission.
Under Article 5, Section 25(A) of the Louisiana Constitution of 1974, the Judiciary Commission is established and Section 25(C) confers on it the authority to recommend to the Supreme Court the removal, censure, or retirement of any sitting judge for "failure to perform his duty." The rule promulgated by the Commission pursuant to Section 25 and Rule XXIII of the Supreme Court of the State of Louisiana sets up a procedure by which any individual may enter a complaint against any sitting judge. Its investigation affords a thorough and expedited hearing[2] clothed with such confidentiality as protects both the complainant and the judge until such time as the Supreme Court is required to act.
The Supreme Court under the general supervisory jurisdiction it exercises over all courts of this State (which encompasses the judiciary) under La.-Const.1974 Art. 5, § 5(A) is the forum of original jurisdiction in all proceedings before the Judiciary Commission.
The Constitution of 1974 by creating the Judiciary Commission and empowering it with the authority to hear all complaints of misconduct lodged against any member of the judiciary of this State takes precedence over the provisions of C.C.P. art. 3901 (quo warranto) and the comments thereunder. By setting up this special procedure for the hearing of complaints of judicial misconduct, it has removed such grievances from the scope of quo warranto and placed them under the exclusive jurisdiction of the Judiciary Commission and the Supreme Court.
The wisdom of the Constitutional Convention in establishing the Judiciary Commission is apparent for quo warranto affords *651 a vehicle to every disgruntled litigant with an imagined or fancied grievance to put a judge to the expense and inconvenience of defending his right to remain in office, even though the petition for his removal may be totally without merit. Abuse of quo warranto could result in judges becoming more involved in defending law suits than trying them.
Finally, I do not feel that Lelong v. Sutherland, 134 So.2d 627 (La.App. 4th Cir. 1961), is apposite to the facts of this case. In Lelong members of the school board and not judges were involved and there was not a constitutional or statutory commission vested with the exclusive authority to hear Lelong's complaint.
For these reasons, I am of the opinion that the appeal should be dismissed for the lack of jurisdiction by this court to entertain it.
LEMMON, Judge, with whom REDMANN and SCHOTT, JJ., join, dissenting.
Exception of No Right of Action
Although the exception of no right of action was waived in oral argument (apparently because both parties desired an expeditious final decision on the merits), the court has raised the issue of a citizen's right to use C.C.P. art. 3901 to question defendant's authority to continue to act as a judge of the Civil District Court for the Parish of Orleans after reaching the mandatory retirement age of 75.
C.C.P. art. 3901 provides:
"Quo warranto is a writ directing an individual to show by what authority he claims or holds public office, or office in a corporation, or directing a corporation to show by what authority it exercises certain powers. Its purpose is to prevent usurpation of office or of powers." (Emphasis supplied)
In Lelong v. Sutherland, 134 So.2d 627 (La.App. 4th Cir. 1961), the court conceded that C.C.P. art. 3901 "might appear to give such authority" to challenge one's right to hold and perform the duties of a public office, but declined to allow such a challenge, the Lelong decision was severely criticized as being contrary to the clear wording of the article. See 23 La.L.Rev. 371, 373 (1963).
A citizen has the right to question judicially the authority of one who exercises governmental powers or of one who sits in judgment over the citizen's rights. C.C.P. art. 3901 expressly provides a statutory method for exercising this right, and Official Revision Comment (b) notes that the provision specifically authorizing a challenge of an individual's right to hold public office was incorporated to complement the Intrusion into Office Act (R.S. 42:76 et seq.), which allows such an action by an individual only when he is claiming the office.
There is no compelling reason why a citizen must follow the two-step procedure of bringing a mandamus to require the Attorney General or District Attorney to raise the substantive question which C.C.P. art. 3901 authorizes the citizen to raise. Plaintiff properly employed C.C.P. art. 3901 to require defendant "to show by what authority he (continues to) claim or hold public office," and Lelong v. Sutherland should be overruled.
Merits
Defendant first became a judge in 1964. At the time La.Const.1921, Art. 7, § 8, relating to retirement, provided in part pertinent to this case as follows:
"(b) Every judge shall retire upon reaching the age of 75 years. If he has served as judge of a court of record for 20 years, he shall receive full pay for life.
"However any judge now serving who, on attaining the age of seventy five years, has served less than twenty years, may remain in the service until he has served for twenty years or until he has attained the age of eighty years, whichever shall occur first and shall then retire. If he has served for twenty years he shall receive full pay for life and if he has served for less than twenty years he shall receive that proportion of his pay which the number of years served on a court of *652 record bears to twenty." (Emphasis supplied)
That wording of the Constitution resulted from a 1960 amendment which reduced mandatory retirement age from the previous 80 years to 75 years. Defendant argues that the exception in Section 8(b), which renders the general provision of the section inapplicable to any judge "now serving" who has served less than 20 years, does not apply to him, because he is "now serving" and was when he became 75 in January, 1977.
A review of the history of constitutional provisions for mandatory judicial retirement is in order.
Prior to 1921 there was no provision for mandatory retirement in the Constitution. Section 8 of the Constitution of 1921, in its original form, provided in part:
"Any judge of the Supreme Court, Courts of Appeal, or District Courts may retire on two-thirds pay when he shall have reached the age of seventy years, and shall have served continuously as a judge of a court of record for twenty years immediately preceding the date of retirement; provided, all judges hereafter elected shall retire on reaching the age of seventy-five years, but shall not receive pay thereafter, unless they shall have served for the required length of time". (Emphasis supplied)
The "hereafter elected" limitation on mandatory retirement was evidently intended to except judges elected under the prior constitution.
In 1928 Section 8 was amended to provide in part as follows:
"Any judge of the Supreme Court, Courts of Appeal, or District Courts, may retire on two-thirds pay when he shall have reached the age of seventy years, and shall have served continuously as a judge of a court of record for twenty years immediately preceding the date of retirement; provided, all judges hereafter elected shall retire on reaching the age of seventy-five years, but such judges shall, nevertheless, continue to serve, unless physically or mentally incapacitated, until their successors shall have been duly elected and qualified; such election to be held at the next general judicial or congressional election following the date when such judges shall have attained the age of seventy-five years. Such judges shall not receive pay after retirement unless they shall have served as judges of courts of record for the required length of time". (Emphasis supplied)
The 1928 amendment thus repeated the basic mandatory retirement language, but added a provision for continuance in office.
In 1936 Section 8 was again amended to provide that "all judges hereafter elected or presently serving shall retire on reaching the age of eighty years", with the same provisions for continuation of service until election of a successor and for prohibition of pay unless there was the required length of service. The 1936 amendment specifically referred to subsequently elected judges, as well as those presently (or now) serving, in order to confer on all judges an increase in rights of service.
In 1938 Section 8 was again amended to require that "(a)ny judge hereafter elected shall retire, and any judge presently serving shall retire, on reaching the age of eighty years", basically repeating the wording of the 1936 amendment on this point. The former provision for continuation of service until the election of a successor was omitted, and further provision was made to allow retirement at the age of 70 with 15 years of service or at any age with 23 years of service.
The 1956 amendment to Section 8 was not pertinent.
In 1960 Section 8 was extensively rewritten. Section 8(b), quoted above, required every judge to retire at 75, thus reducing the mandatory retirement age from 80 and (if no exception had been made) taking away from judges then serving the right to serve until age 80 and to earn retirement pay. However, an exception was made for any judge now serving (with less than 20 *653 years of service) to serve until age 80 or until he attained 20 years.[1]
When the 1974 Constitution was adopted, Section 23(A) of the judiciary article provided that "(t)he retirement benefits and judicial service rights of a judge in office or retired on the effective date of this constitution shall not be diminished, nor shall the benefits to which a surviving spouse is entitled be reduced". Section 23(B) further reduced the mandatory retirement age to 70.
In summary the mandatory retirement age was first set at 75, with no provision for pay for judges who had not served 20 years. The mandatory provision, however, applied only to judges "hereafter elected" until 1936, when the provision raising the mandatory retirement age to 80 was made applicable to all judges "hereafter elected or presently serving". The 1960 amendment reduced the mandatory retirement age, but excepted from this reduction "any judge now serving" who upon reaching the lowered mandatory retirement age would not have served the time necessary for retirement at full pay.
As amended in 1960 the first paragraph of Section 8(b), applicable to "every judge" without either of the previously used qualifying phrases "hereafter elected" or "presently serving", was obviously intended to apply generally to every judge, in whichever category. The second paragraph of Section 8(b), applicable to "any judge now serving", was obviously intended as an exception to the general requirement for mandatory retirement, applicable only to judges "now serving" (and thus not to judges "hereafter elected"). The historical use of the term "presently serving" in conjunction with or as opposed to "hereafter elected" demands this interpretation.
If, as defendant contends, the term "any judge now serving" applies generally to every judge [as does the term "every judge" in the first paragraph of Section 8(b)], then the term "now serving" has no meaning whatsoever. Such an argument for universal application of a term obviously intended for particular application requires that the phrase "now serving" be ignored completely.
Of general and common knowledge is the fact that age often takes its toll on even the keenest of human minds and the healthiest of human bodies. Recognizing this fact, and apparently believing that a maximum age was as important and valid an element in required qualifications for judges as was a minimum age, the drafters of the Constitution of 1921 included a provision for mandatory retirement of judges.
The purpose of the constitutional provision was to insure not only that judges were qualified when elected, but also that they remained qualified during their terms of office. By placing an objective and absolute requirement in the Constitution instead of a subjective standard for judging the qualifications of each judge upon reaching a certain age, the drafters of the provision declined to place an awesome responsibility on an aging judge's colleagues to determine his continued qualifications.
By the same reasoning which dictated that an aging judge's colleagues should not have such a burden, this constitutional provision (whose intent and purpose is obvious) must not be interpreted so as to allow to remain in office a judge who has reached the mandatory age, regardless of the condition of his physical and mental faculties. The provision must be interpreted in accordance with its apparent intent and clear wording, without reference to the continued competency of the particular judge whose qualifications are under consideration in a particular case.
We conclude that the term "any judge now serving" means any judge serving at the time of the adoption of the amendment in 1960. Because defendant was not serving at the time of the adoption of the 1960 *654 amendment, he does not come under the exception in Section 8(b).
Defendant further contends that La. Const.1974, Art. 5, § 22(C) allows him to serve through the remainder of his term, which ends in 1984. Section 22(C) provides as follows:
"(C) END OF TERM. A judge serving on the effective date of this constitution shall serve through December thirty-first of the last year of his term or, if the last year of his term is not in the year of a regular congressional election, then through December thirty-first of the following year. The election for the next term shall be held in the year in which the term expires, as provided above."
Section 22(C) was intended to make all judicial terms throughout the state end on December 31 in congressional election years, inasmuch as some terms ended on other dates under the prior constitution. This intention is indicated by the title of the paragraph "End of Term" and by resort to reason. Indeed, a constitution which decreases the mandatory retirement age from 75 to 70 cannot reasonably be interpreted to allow (much less to require) a judge above 75 to serve until the end of his term.
Furthermore, defendant's contention that Section 22(C) allows him to serve through the end of his term is inconsistent with the use of the mandatory word "shall". The logic that the Constitution obviously did not intend to require a judge to serve through the end of his term (if otherwise eligible for retirement) militates against defendant's argument that Section 22(C) was intended to allow him to do so. Moreover, Section 22(C) cannot reasonably be construed to constitute an exception to the general law stated in Section 23(B).[2] As specifically stated in Section 23(B), the exception to mandatory retirement at 70 is "except as otherwise provided in this section", referring to Section 23 and not to Section 22.
Section 22(C) cannot reasonably be construed to allow defendant to serve the remainder of his term after he has reached the mandatory retirement age.
Finally, the statement in Swift v. State, supra, that pension statutes should be liberally construed in favor of intended beneficiaries, does not avail defendant. This case does not involve the interpretation of a statute providing pension benefits, but rather the interpretation of a provision for the date of mandatory retirement. The incidental fact that defendant's continuing in service enhances his retirement benefits does not serve to bring this case under the rationale of the Swift decision.
The judgment of the trial court should be reversed and the writ of quo warranto made peremptory in accordance with C.C.P. art. 3902.
NOTES
[1] Budget Plan of Baton Rouge, Inc. v. Talbert, 276 So.2d 297 (La. 1973).
[1] La.-Const.1921 Art. 7, § 8 as amended in 1960.
[2] The expedited process of the Commission avoids the time-consuming process of quo warranto as it progresses through the district court, the Court of Appeal, and ultimately comes to rest with the Supreme Court where it was destined to be finally decided from the moment of its filing.
[1] Section 8(c) eliminated the requirement for a specific length of service in order to receive pay after retirement and allowed retirement with pay at the age of 70 years, in addition to other provisions for retirement with pay after a specific length of service or a combination of service and age.
[2] Section 23(B) provides:

"Except as otherwise provided in this Section, a judge shall not remain in office beyond his seventieth birthday."