PONDER, Justice.
 

 This is an appeal from a judgment rendered in a general election contest brought under Act 24 of 1894.
 

 The plaintiff, Andrew Nunez, was the Democratic nominee for the office of Constable of Ward 5 of the Parish of St. Bernard and his was the only name printed on the official ballots for this office in the general election held April 16, 1940. At the general election there were 160 votes cast for Andrew Nunez and 186 votes cast for A. J. Plaisance, the defendant, by the electors writing in the name of A. J. Plaisance in the blank space on the ballots provided for such. The commissioners of election counted and tabulated the votes cast for Andrew Nunez and those cast for A.' J. Plaisance and made their return thereon. On April 19, 1940, the Board of Supervisors of Election for the Parish of St. Bernard, compiled and tabulated the returns and made a public proclamation that A. J. Plaisance was elected Constable of the Fifth Ward of the Parish of St. Bernard. The plaintiff instituted this suit in the lower court contesting the election on the grounds: First, that he was the official candidate; second, that the contestee, A. J. Plaisance, had not qualified in accordance with the Constitution and laws of the State by filing a notice or statement of his candidacy with the clerk of court at least 10 days before the general election; third, that the contestee was ineligible to make any notification of candidacy because he had participated in the democratic primary; and fourth, that the Constitution forbids the counting of the ballots so “written in” for the cpntestee. At the time this case was tried in the lower court there were two other contest suits pending, Omer Perez v. Lawrence Hurstell, involving the office of Justice of Peace of the Fifth Ward of St. Bernard Parish, and Frank J. Campo v. Ben Acosta, involving the office of Constable of the Sixth and Seventh Wards of St. Bernard Parish, presenting the same issues. The three contest suits were consolidated for trial in the lower court with the understanding that separate judgments would be rendered in each case.
 

 From an examination of the record it appears that the contestees prepared proper statements containing their correct names under which they were to be voted on and that they were willing and consented to be voted on for such offices. The notices or statements were registered and deposited in the U. S. mail on April 5, 1940, ad
 
 *929
 
 dressed to Louis M. Vinsanau, Clerk of the Court for St. Bernard Parish. The clerk was in his office only for a short time during the morning hours on April 5 and left at 9:30 A. M. to go on a fishing trip. He was absent from his office from 9:30 A. 3VL, Friday morning, April 5, until Monday morning, April 8, leaving his two daughters, neither of whom was a deputy clerk, in charge of the office during his absence. The letters containing the notices or statements were received by one of the clerk’s daughters on April 6, but she did not open the letters or file the notices or statements. The letters were not received by the clerk of court until he returned to his home from the fishing trip on April 7. On April 8 the clerk filed the notices or statements. On April 10 a committee composed of four persons called on the clerk and stated that they were authorized by the contestees to withdraw the notices or statements and he gave the committee the notices or statements. The contestees testified that the committee was not authorized to withdraw their notices or statements, which testimony is not controverted. Upon trial the lower court gave judgment in favor of the contestants declaring them to be duly elected to the offices claimed. From these judgments the contestees have appealed.
 

 The suits of Omer Perez v. Lawrence Hurstell, Andrew Nunez v. A. J. Plaisance and Frank J. Campo v. Ben Acosta, bearing numbers 35922, 35923, and 35924 respectively, of the docket of this court, involve the same issues and were consolidated for the hearing of the appeals with the understanding that separate judgments are to be rendered, 196 La. 936, 200 So. 305, 196 La. 935, 200 So. 305.
 

 From the hriefs • filed herein and' the arguments advanced by counsel for both sides it appears that the controversy has narrowed down to the question of whether the notices were timely filed. The appellants, the contestees, contend that under the circumstances of this case the depositing of the notices in the U. S. mail properly addressed to the clerk of court, within the time prescribed, should be deemed and accepted as a filing thereof with the clerk of court at the time they were mailed on April 5, 1940. The appellees, the contestants, contend that the notices or statements were not filed until April 8, the time the clerk actually filed them.
 

 The general election involved herein was held on April' 16, 1940. It is admitted that if the notices or statements were properly filed on April 5 that the filing would be timely. For’ the purpose of this decision we may concede that April 5 was the last day within which the notices or statements could be filed.
 

 Section 15, Article 8 of the Constitution, Amendment of 1934, provides:
 

 “Provided that no person whose name is not authorized to be printed on the official ballot, as the nominee of a political party or as an independent candidate, shall be considered a candidate for any office unless he shall have filed with the Clerks of the District Court. of the parish or parishes in which such election is to be held, * * * at least ten (10) days before the general election, a statement containing the correct
 
 *931
 
 name under which he is to be voted for and containing the further statement that he is willing and consents to be voted for for that office, and provided further that no commissioners of election shall count a ballot as cast for any person whose name is not printed on the ballot or who does not become a candidate in the foregoing manner.”
 

 In the case of State ex rel. Hinyub et al. v. Parish Democratic Executive Committee, 173 La. 857, 138 So. 862, 865, wherein certain persons desiring to be candidates in a democratic primary were not afforded the opportunity to qualify as such on the last day when the time for filing was about to expire, because of the absence of the chairman of the committee, this court held that the depositing of the notices in the U. S. mail, properly addressed to 'the chairman of the committee was a proper filing under such circumstances.
 

 In the case of State ex rel. Hinyub v. Parish Democratic Executive Committee, supra, this court said:
 

 “In justice and fairness to Mr. Fisher and Mr. Clancy, we must state in this connection that there is nothing to indicate that either one intentionally absented himself or tried to conceal his movements during the day in order to prevent relators from filing their notices. We therefore absolve them from all charges and imputations of bad faith.
 

 “But we do find and hold that they did not comply with their whole duty as officers of the committee to all persons whose privilege it was to become candidates for office. The committee set the time limit within which notices might be filed and designated the officer with'whom such notices might be filed. That officer was the chairman, Mr. Fisher, who, with the approval of the committee, authorized the secretary, Mr. Clancy, to receive and file such notices as might be presented to him, so that prospective candidafes might file their notices with either up to the time
 
 limit,
 
 which was 12 o’clock midnight on the 17th.
 

 “It was the intent of the lawmaker to afford to prospective candidates not only the privilege of filing notices of their intention to become candidates, but the opportunity to do so as well, for the privilege without the opportunity would be of no avail. It was the duty of Fisher and Clancy to afford the opportunity, which involved the further duty of making themselves available to all those who desired to exercise the privilege of filing. This they failed to do.
 

 “We do not mean to hold that it is'the duty of such officers, under the primary election law, to establish an office at a certain place and to remain there every moment of the time. But it is the duty of those who accept responsibilities such as those imposed upon Fisher and Clancy in this case, and by resolution of the committee, to afford to those who desire to become candidates reasonable opportunities to do so. If they absent themselves from their homes or places of business, where it. is understood they may usually be found, it is their duty, especially on the last day, when the time for filing is about to expire, to let it be known in some way where they
 
 *933
 
 may be found or to furnish some information as to how a prospective candidate may have his notice filed. Otherwise a citizen might be deprived of the privilege of becoming a candidáte.
 

 “It is the duty of those in charge of primary election machinery to afford all facilities possible to those who desire to become candidates. The purpose and spirit of the primary election law is to encourage worthy citizens to become candidates for public office, or, as was said in Langridge v. Dauenhauer et al., 120 La. 450, 45 So. 387, 388, ‘to encourage the multiplication of worthy candidates for nominations to public office, in order that the body of voters constituting a political party, or constituting the electorate at large, may have the benefit of a choice, and not be compelled to accept candidates chosen by the minority or thrust upon them in some other way.’ ”
 

 In the case of State ex rel. Elston et al. v. Parish Democratic Executive Committee, 173 La. 844, 138 So. 857, wherein certain persons desiring to become candidates in a democratic primary were not afforded an opportunity to qualify as candidates in the primary election within the time fixed by the Democratic Executive Committee and who were refused the right to qualify at a later day by the officials in charge of the election, this court held that the prospective candidates were entitled to the rights to qualify under the circumstances and ordered the chairman of the committee to accept the required deposits and qualification papers of the prospective candidates.
 

 What was said and .held in the aforementioned cases with respect to the primary laws is equally true with reference to the laws governing general elections. In either event those desiring to become candidates must be afforded a reasonable opportunity to qualify as candidates and it is the duty of those in charge of the election machinery to afford facilities to that end.
 

 Counsel for the appellees, the contestants, contend that the case of State ex rel. Hinyub et al. v. Parish Democratic Executive Committee, supra, is not applicable or controlling because, therein, the persons desiring to be candidates made considerable effort to locate the chairman of the committee while in the instant case the contestees did not seek to locate the clerk of court or go to the clerk’s office. The evidence is silent in this respect. However, the only reason that we can see why the notices or statements were mailed was that the contestees were aware of the absence of the clerk of court. Be that as it may, it would have been a vain and useless act on the part of the contestees to go to the clerk’s office in order to file the statements after 9:30 A. M. on April 5. because the clerk was not there to accept them. Moreover the clerk’s office was not left in charge of a deputy clerk and there was no one authorized to accept such notices or statements.
 

 Considering the circumstances in this case we are of the opinion that the deposit-, ing of the notices or statements in the U. S. mail, registered and properly addressed to
 
 *935
 
 the clerk of court, within the time prescribed, should be considered as a filing thereof with the clerk of court as of the time they were mailed.
 

 For the reasons assigned the judgment of the lower court is reversed and set aside. The suit is dismissed at the cost of the.appellees, the contestants.
 

 O’NIELL, C. J., does not take part.