531 So.2d 754 (1988)
Melvin J. GIEPERT
v.
Lorain F. WINGERTER and Edwin A. Lombard Clerk of Criminal District Court and Secretary of Board of Election Supervisors.
No. 88-C-2175.
Supreme Court of Louisiana.
September 12, 1988.
Gary Giepert, New Orleans, for applicant.
Martin Wingerter, New Orleans, for respondents.
COLE, Justice.
Melvin J. Giepert brought this action alleging Judge Lorain Wingerter is not eligible to seek reelection because he is beyond the mandatory retirement age for judges of 70 years set out in Article V, sec. 23 of the Louisiana Constitution of 1974. The Civil District Court for the Parish of Orleans rendered judgment for Giepert and ordered Wingerter's name removed from the list of candidates. The Louisiana Court of Appeal for the Fourth Circuit reversed, finding Wingerter had a constitutionally protected right to remain in office until age 75. 529 So.2d 1389. We granted writs to review the decision of the Court of Appeal and to settle the important constitutional question presented.
The pertinent facts are undisputed. Judge Wingerter's birth certificate shows he was born September 18, 1917 and is currently 70 years old. He was first elected a City Court Judge for the City of New Orleans in 1948 and he has served continuously since that time. He was last reelected, without opposition, in 1982. He qualified as a candidate for reelection on July 27, 1988.
Two distinct questions are presented for review. The first is whether Giepert properly challenged Wingerter's candidacy on the basis of age by a suit under the Election Code, Title 18 of the Louisiana Revised Statutes. The second is whether Wingerter, a judge in office on the date the 1974 Constitution was adopted, is subject to the age 70 mandatory retirement provision of Article V, § 23(B). Implicit in the second question are three distinct but related issues:
1. Whether the term "judicial service rights" in La. Const., Art. V, § 23(A) protects Wingerter's eligibility to serve past age 70 as provided by the 1921 Constitution;
2. Whether the proviso clause of La. Const., Art. V, § 23(B) applies to a judge in office on the effective date of the 1974 Constitution; and
3. Whether a judge's "service rights" under the 1921 Constitution are limited by Article XIV, § 16A of the 1974 Constitution *755 which adopted the earlier constitutional judicial retirement provisions as statutes, now codified at La.R.S. 13:30.

PROCEDURAL AND JURISDICTIONAL ISSUES
Wingerter argues Giepert failed to state a right or cause of action in his challenge to Wingerter's candidacy on the grounds of age. He notes age is not mentioned in the statute establishing the qualifications of New Orleans City Court judges, La.R.S. 13:1873. He also claims the Election Code, La.R.S. 18:492 sets out four precise and exclusive grounds for objection to a candidacy. Since Wingerter satisfies all the statutory requirements, he argues Giepert's action should be dismissed.
Wingerter also contends the trial court lacked jurisdiction to pass on his ability to hold office if reelected. He argues this Court, with the assistance of the Judiciary Commission, has original and exclusive jurisdiction under the Constitution to decide this issue. See La. Const., Art. V, § 25. Therefore, Wingerter concludes, Giepert's action should be dismissed for lack of subject matter jurisdiction below.
Giepert contends the trial court was correct in its decision "that it would be a legal absurdity to declare a person qualified to run for an office which he cannot hold under the law." Giepert v. Wingerter, No. 88-15629, Reasons For Judgment at 3 (Civil District Court for the Parish of Orleans, August 12, 1988).
Because we conclude Wingerter can hold office if reelected, and because of the need for prompt action in this matter, we pretermit discussion and resolution of the procedural and jurisdiction issues presented.[1]

CONSTITUTIONAL ISSUES
1. Whether the term judicial service rights in La. Const., Art. V, § 23(A) protects Wingerter's eligibility to serve past age 70 as provided by the 1921 Constitution.
As a threshold matter, we cannot say the term "judicial service rights" is a recognized term of art with a known and accepted meaning. We also cannot say the meaning of the term is clear and unambiguous on its face, and the context does not provide a precise definition. Thus, the use of constitutional history to help clarify the meaning of the phrase is not precluded. We note in our decision in Small v. Guste, 383 So.2d 1011 (La.1980), we looked to the history of Article V to clarify the meaning and purpose of § 25. Id. at 1014 fn. 3; see also, New Orleans Firefighters Ass'n v. Civil Service Comm'n of City of New Orleans, 422 So.2d 402, 407 (La.1982).
Article V, § 23(A) provides in relevant part: "The retirement benefits and judicial service rights of a judge in office or retired on the effective date of this constitution shall not be diminished ..." La. Const. Prior judicial interpretation of this provision is limited to the 1983 case of In Re Levy, 427 So.2d 844 (La.1983). In Levy we noted simply: "Section 23 required the legislature to provide a new retirement system for new judges, optional for judges already in office whose retirement benefits and rights already earned by judicial service would not be diminished." Id. at 846. The facts in Levy were quite different from those presented here. Judge Levy was over 80 years old at the time of the proceedings, so even under the retirement provisions of the 1921 Constitution, a judge in Levy's position would have been retired. See id. Wingerter, at age 70, is well below the ordinary retirement age prescribed by the earlier constitution.
Levy argued he should be allowed to serve out his current term under Article V, § 22 of the 1974 Constitution, alleging this provision trumped the mandatory retirement provisions of both the 1921 and 1974 constitutions. We rejected this contention, refusing to hold both retirement provisions inapplicable. The validity of some constitutional mandatory retirement age for judges is not in doubt. Every other state supreme court considering this question has upheld *756 the validity of such provisions. See the cases collected in Annotation, Mandatory Retirement of Public Officer or Employee Based on Age, 81 A.L.R.3d 811 (1977). Here Wingerter does not seek to avoid mandatory retirement as Levy did; he seeks to serve until age 75 as was his right under the 1921 Constitution, Art. VII, § 8.
In our decision in Levy, we adopted the recommendation of the Judiciary Commission of Louisiana. 427 So.2d at 847. The position of the Commission on the meaning of § 23(A) was clearly set out in its brief to this Court: "Thus, it is clear that Subsection (A) of Article V, sec. 23, was intended by the Constitutional Convention to provide an age 75 or age 80 mandatory retirement age for judges already in office on January 1, 1975 ..." Brief for Judiciary Commission at 16, In Re Levy, 427 So.2d 844 (La.1983). The interpretation of the Judiciary Commission is not binding on this Court but it is entitled to some weight. After an independent review of the pertinent authorities, we conclude the Commission's interpretation of § 23(A) is correct.
Both the constitutional history and the scholarly literature support the conclusion the "service rights" of a judge in office on January 1, 1975 include the right to serve until at least age 75 as provided in the 1921 Constitution. In a 1977 law review article on Article V, Professor Hargrave, Coordinator of Legal Research for the 1973 Constitutional Convention, states flatly the purpose of the "service rights" clause was to keep 75 as the retirement age for judges in office under the old constitution. See Hargrave, The Judiciary Article of the Louisiana Constitution of 1974, 37 La.L.Rev. 765, 827 (1977). Of the applicability of § 23(B), the current retirement provision, he writes: "The mandatory retirement age of 70, however, applies only to judges who were not in office on the effective date of the constitution." Id. The actual records of the 1973 Constitutional Convention support this conclusion.
The present text of § 23(A) was introduced as an amendment by Delegate Kean. See, 6 Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts 852 (1977). The only definition of the phrase "judicial service rights" in the constitutional history was supplied by Delegate Tobias. In attempting to define the scope of the mandatory retirement age amendment (present § 23(B)), Tobias said: "Now this phrase [§ 23(B)] would not affect any presently sitting judge. The reason is that under the Kean amendment, the phrase `judicial service rights' would continue any judge in office until that time." Id. at 857. Giepert cites no alternative definition of "judicial service rights" in the constitutional history and we found none.
We conclude Wingerter's "service rights" preserved by § 23(A) include the right to remain in office until at least age 75 as provided by the 1921 Constitution. In the 1921 Constitution, Article VII, § 8 initially provided for a judicial retirement age of 75. In a 1936 amendment, the mandatory retirement age for judges was raised to 80. Finally, in 1960, a constitutional amendment lowered the age to 75. The 1960 amendment did not except judges then in office from its scope, but it did permit sitting judges to continue to serve until age 80 or until they had achieved 20 years of service, whichever came first. See La. Const., Article VII, § 8 (1921) (as amended in 1960). No further changes were made in judicial retirement age prior to the adoption of the 1974 Constitution. Wingerter's "service rights" were fixed on December 31, 1974, the last day before the new constitution took effect. These rights provided by the 1921 Constitution included the right to serve until age 75, or until age 80 if he needed additional years to achieve 20 years vested retirement service.
Section 23(A) was expressly designed to protect the rights and expectations of judges who took office prior to 1975. Simply put, the "judicial service rights" phrase was designed to protect all the benefits of office possessed by judges prior to the adoption of the present constitution. The phrase is used in the context of an exception to the new mandatory retirement age provision, and means no judge in office prior to the adoption of the new constitution could be forced to retire at age 70. *757 The new retirement provision in § 23(B) was directed to judges taking office on or after January 1, 1975, the effective date of the 1974 Constitution. We find no merit in the claim the protection was limited to the current term of judges then in office. The Convention expressly rejected the Zervignon amendment which would have incorporated such a limitation, and no language in the final text of § 23(A) supports such a claim. See 6 Records, supra, at 856-857.
2. Whether the proviso clause of La. Const., Art. V, § 23(B) applies to a judge in office on the effective date of the 1974 Constitution.
Our conclusion Wingerter's right to serve past age 70 is a protected "service right" under § 23(A) is bolstered by the proviso clause of § 23(B). Subsection (B) reads: "Except as otherwise provided in this Section, a judge shall not remain in office beyond his seventieth birthday." La. Const., Art. V, § 23(B) (emphasis added). Under accepted rules of construction, the proviso clause must be given effect. See, e.g., Public Housing Administration v. Housing Authority of Bogalusa, 242 La. 519, 137 So.2d 315, 320 (1961); Meyers v. Flournoy, 209 La. 812, 25 So.2d 601, 603 (1946). For this proviso to have effect, the drafters must have contemplated circumstances in which the mandatory retirement age would not apply.
We find the circumstances contemplated are those presented here. A judge in office was to be exempted from the new mandatory retirement age since he was already in office subject to the retirement age provision of the 1921 Constitution. This conclusion is amply supported by the remarks of Delegate Tobias, supra, and is in keeping with the interpretation of the Judiciary Commission. See Brief for Judiciary Commission at 16-17, In Re Levy, 427 So.2d 844 (La.1983) "Subsection (B) of that same section 23 was intended by the Constitutional Convention to provide an age 70 mandatory retirement age for judges taking office for the first time on or after the January 1, 1975 effective date of the 1974 Constitution." No language limits the proviso to the current term being served by judges then in office. The defeat of the Zervignon amendment discussed above also militates against such a restrictive reading of the clause.
3. Whether a judge's "service rights" under the 1921 Constitution are limited by Article XIV, § 16(A) of the 1974 Constitution which adopted the earlier constitutional judicial retirement provisions as statutes, codified at La.R.S. 13:30.
This final issue is readily resolved. We find La.R.S. 13:30 places no limitations on Wingerter's protected service rights for the following reasons. First, Article XIV, § 16(A) provides for adoption of certain provisions of the 1921 Constitution, but only to the extent these earlier provisions do not conflict with the 1974 Constitution. Since Wingerter's right to serve until age 75 is protected by Article V, § 23(A), any contrary provision in R.S. 13:30 would conflict with the constitution and be thus facially invalid.
Second this problem is avoided since nothing in the borrowed provisions codified in R.S. 13:30 conflicts with Wingerter's right to serve until age 75. The reference to age 70 as the mandatory retirement age in R.S. 13:30(B) is prospective in effect as is its counterpart in Article V, § 23(B). It is not applicable to Wingerter. Third, La.R.S. 13:30 is not applicable here since it deals with eligibility for judicial pension benefits, an issue not before us. Finally, we note Wingerter's right to serve is not a product of R.S. 13:30; it stands or falls under the 1921 Constitution itself through the operation of the "service rights" clause of § 23(A).

CONCLUSION
We conclude Wingerter, a judge in office when the 1974 Constitution took effect, has the right to serve past age 70 as provided in the 1921 Constitution. Only this interpretation of Article V, § 23(A) gives meaning to the "service rights clause" and the proviso clause of § 23(B) while avoiding any possible conflict with Article XIV, § 16(A)'s adoption provision. Accordingly we hold Wingerter is an eligible candidate for reelection and is eligible to serve, if *758 reelected, at least until his 75th birthday. The decision of the Court of Appeal is affirmed.
AFFIRMED.
DIXON, C.J., dissents with reasons.
WATSON and LEMMON, JJ., dissents and assigns reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
The judicial article of the 1974 Constitution made two important changes: the terms of office for judges were reduced; mandatory retirement age was reduced.
When the new Constitution was adopted, no judge thought he had a right to run for a term of office longer than that permitted by the new Constitution. No judge was given any reason to believe that he could serve beyond the newly enacted retirement age of seventy, except as provided in the new Constitution.
Section 23 of Article 5 of the new Constitution provides:
"(B) Mandatory Retirement. Except as otherwise provided in this Section, a judge shall not remain in office beyond his seventieth birthday."
The mandatory retirement age was fixed at seventy. The only exception was "as otherwise provided in this Section." There is no other provision varying the mandatory retirement age of seventy in Article 5, Section 23 unless it is found in the term in Section 23(A) of that article, "retirement benefits and judicial service rights of a judge in office or retired" upon the effective date of the new Constitution. Nobody knows what was intended by "judicial service rights." The term has no history and no common understanding. "Retirement benefits" is a term that is fairly easy to understand. "Judicial service rights" was apparently a new term, employed for the first time at the Constitutional Convention. It could refer to a judge's term of office.
It was a common understanding that a judge in office at the time of the adoption of the new Constitution had a right to serve until the end of the term for which he was elected, under the old Constitution. But when that term ended, no judge would ever be able to claim that he had a right to the longer term of office which was in effect when he was last elected under the old Constitution.
Nor should any judge have the right to expect to serve beyond the new seventy year mandatory retirement age, unless he would reach seventy-five during the term of office which he was then serving.
Even under the old Constitution, however, a judge had the right to serve for twenty years or until he reached the age of eighty years, whichever came first. Under the last amendment of the old Constitution, a judge who reached the age of seventy-five, and who served as a judge for twenty years was entitled to retirement at full pay. Under the old Constitution any judge who had served less than twenty years could stay in the service for twenty years or until he reached the age of eighty, and then retire on full pay if he had served twenty years. Article 7, Section 8(b), Louisiana Constitution of 1921. This benefit was not changed. It was continued in effect as a "super statute" by the terms of the new Constitution, and enacted by the legislature in 1978, when the new retirement benefits in the statutes provided the only exception for service beyond the mandatory retirement age. Any judge who was in office on December 31, 1974, the effective date of the new Constitution, "may remain in the service until he has served for twenty years or until he has attained the age of eighty years, whichever occurs first, and he shall then retire...." R.S. 13:30 B.
This is the only exception to mandatory retirement referred to in Article 5, Section 23 of the new Constitution.
There is no clear indication from the record of the debates on the new judicial article in the Constitutional Convention that one elected to office acquired the right to serve until seventy-five or eighty, except by reaching that age during the term of office for which he was elected under the old Constitution.
*759 WATSON, Justice, dissenting.
Under the 1974 Constitution, all state judges are required to retire at the age of 70. Judge Lorain F. Wingerter claims an exception to this rule.
Wingerter maintains that, when the 1974 Constitution became effective, he was in office, subject to a mandatory retirement age of 75, and his right to serve until age 75 is a judicial service right vested in him by Article 5, Section 23(A).[1]
The 1974 Constitution provides only two exceptions to its mandatory retirement age: one for those judges serving in 1974 who would reach 70 before the expiration of their terms; and a second for those judges reaching mandatory retirement age before accruing 20 years of service.[2] Neither exception applies to Judge Wingerter, who did not turn 70 before the term he was serving in 1974 expired and has accrued more than 20 years of judicial service.
The constitutional mandate that Judge Wingerter's judicial service rights not be diminished by the 1974 Constitution has been satisfied. He served the term of office to which he had been elected. When that term expired, he was re-elected under the new Constitution and his right to serve vested anew. Although his retirement benefits were protected, the term of his service was altered. The issue is debatable, but the plain words of Section 23(B) make Judge Wingerter subject to the mandatory retirement age of 70, although he and other judges similarly situated are to be commended for their willingness to continue public service.
I respectfully dissent.
LEMMON, Justice, dissenting.
I disagree that La. Const. art. V, § 23 should be interpreted to provide a general exemption from mandatory retirement at age seventy to all judges in office on the effective date of the 1974 Constitution. My reasons require a review of the history of the retirement section of the judiciary article in the 1921 Constitution.
Judicial Retirement System under the 1921 Constitution
The Louisiana Constitution of 1921 from its adoption has contained a system for judicial retirement with a provision for mandatory retirement. The original Section 8 permitted a judge to retire at age seventy at two-thirds pay with twenty years of service, but required retirement at age seventy-five, with no retirement pay unless the judge had served the required length of time.[1] The 1928 amendment permitted the judge to continue serving after reaching mandatory retirement age until his successor was elected at the next congressional election.[2] The 1936 amendment raised the mandatory retirement age to *760 eighty.[3] Section 8 was again amended in 1938 to authorize permissive retirement at two-thirds pay for judges with fifteen years of service at age sixty-five, or judges with twenty years of service at age seventy, or judges with twenty-three years of service regardless of age. Full pay was authorized for a judge who reached the mandatory retirement age of eighty with at least twenty years of service.[4] The 1960 amendment lowered the mandatory retirement age back to seventy-five, but included a "grandfather clause" which permitted a judge in office on the effective date of the amendment to continue serving until he attained the twenty years of service required for retirement at full pay or until he reached the former mandatory retirement age of eighty, whichever occurred first. Another change permitted a judge to retire at age seventy and to receive full pay with twenty years of service or to receive the proportion of full pay that his years of service bears to twenty years. A third change permitted an appellate judge to retire at full pay at age sixty-five if he had served for twenty-five years.[5]
*761 Thus, after the last amendment to Section 8, a judge could not retire at full pay prior to reaching age seventy (or age sixty-five for an appellate judge) and could continue to serve beyond the mandatory retirement age of seventy-five only until he served enough years to retire at full pay (subject to the former mandatory retirement age of eighty). The Legislature, in proposing the 1960 amendment, clearly focused on exempting from the new mandatory retirement requirement only those judges who had not yet acquired the right to receive full pay upon retirement and who could attain additional retirement benefits by further service.
Interpretation of 1974 Constitution
The delegates to the 1973 Constitutional Convention (in the so-called Gravel amendment) decided that provisions for a comprehensive system of judicial retirement should be in the statutes and not in the Constitution.[6] Vol. X, Verbatum Transcript, Constitutional Convention of 1973 (August 18, 1973) p. 73. However, after deciding to classify the details of a judicial retirement system as statutory material, the delegates (in the so-called Kean amendment) included in the Constitution a mandate to the Legislature to enact a retirement system which new judges would be required to join and which judges then in office would have the option to join with credit for all prior service. La. Const. art. V, § 23(A). This section also included a prohibition against the diminution of "retirement benefits and judicial service rights of a judge in office or retired on the effective date of this constitution."
Section 23(B) provided for mandatory retirement at age seventy "[e]xcept as otherwise provided in this Section". Since there are no other subsections to Section 23, the exception to mandatory retirement at age seventy must be contained in Subsection (A). Resolution of this case turns on the interpretation of the exception in Subsection (A).
The phrase "judicial service rights of a judge in office or retired" in Subsection (A) is a rather nebulous term for the delegates to have used if they intended to exempt from the new mandatory retirement age all judges in office on the effective date of the constitution.[7] If the delegates had intended a general "grandfather clause", it would have been much simpler to have stated this intention in direct language in Section 23(B) pertaining to mandatory retirement (just as the Legislature had done in proposing the 1960 amendment to the 1921 Constitution). It therefore appears that the delegates intended, as an exception to the new mandatory retirement age, something less than a general exemption of all judges then in office.
The primary concern of the delegates in the debates on Section 23 was to protect the retirement rights to which judges then in office would have been entitled if the existing system had been continued in effect. These rights, as noted in the discussion of the 1921 Constitution, were (1) to retire at full pay upon reaching age seventy with twenty years of service sixty-five for appellate judges with twenty-five years of service, (2) to retire at two-thirds pay at age sixty-five with twenty-five years of service or at any age with twenty-three years of service, (3) to retire at a proportionate amount of full pay at age seventy with less than twenty years of service, and (4) to continue in office beyond the mandatory retirement age for a limited period, but only if the judge had not yet attained the right to retire at full pay. Since the delegates were well aware of these existing rights and referred to them generally throughout the debates, the logical inference is that the nebulous term "judicial service rights", particularly when used conjunctively with the term "retirement benefits" in the subsection governing the retirement system, referred to the rights listed above.
*762 Furthermore, the general rule for mandatory retirement in Subsection (B) is very clear and unambiguous. While a limited exception was apparently intended, the vague language contained in Subsection (A) should be construed in a limited fashion. The majority broadly interprets the intent of the delegates in using the phrase "judicial service rights" to confer a general exemption from the new mandatory retirement age. However, it is more reasonable to interpret the terms "retirement benefits" and "judicial service rights", which are both in Subsection (A) pertaining to the retirement system, as referring together to those retirement rights to which the judges then in office would have been entitled on account of judicial service if the existing retirement system had been continued. These rights include the right of a judge then in office to serve beyond the mandatory retirement age only if he could increase his retirement percentage of full pay.[8]
I would interpret Section 23 as generally lowering the mandatory retirement age to seventy, but preserving the right of judges in office at the time of the effective date to continue serving beyond the mandatory retirement date only if additional service would advance them toward the status of entitlement to full pay upon retirement. Since defendant in the instant case achieved this status long ago, he does not fall within the exception to the mandatory retirement rule contained in Section 23(B).
Jurisdiction of District Court
Citing Small v. Guste, 383 So.2d 1011 (La.1980), defendant argues that the district court lacked jurisdiction over the subject matter and that the Judiciary Commission of Louisiana was the proper forum for instituting this proceeding.
In the Small case this court decided that exclusive original jurisdiction in a suit to remove a judge from office is vested in this court and that the sole procedure for invoking this judicial power is the recommendation of the Judiciary Commission.[9] La. Const. art. V, § 25. This case is clearly distinguishable from the Small case, which was an action to remove a judge from office during the term for which he had been elected. The present case is an action to prevent a candidate (who happens to be an encumbent judge) from running for reelection based on his failure to qualify under the maximum age limitation for holding judicial office.
La. Const. art. V, § 24, which sets forth the qualifications for judicial office in terms of minimum length of time of domicile in the district and of admission to the *763 practice of law in Louisiana, admittedly does not contain a minimum or maximum age requirement.[10] However, Section 23(B)'s maximum age limitation of seventy years clearly sets forth a requirement for qualification for serving in the judiciary. It is basic logic that any person, whether judge or not, who cannot serve as a judge upon election because he is over the mandatory retirement age also cannot qualify for election to the office of judge.
The instant case presents a pure question of law involving the qualifications of a candidate for the judiciary for election to a judicial office for a term which will begin on January 1, 1989. Plaintiff does not seek to remove a judge from office during the term for which he has already been elected. Rather, he challenges the qualifications of a candidate (who happens to be the judge presently holding the same office for which he seeks reelection) to serve in that office if elected. Accordingly, the district court properly exercised jurisdiction over the subject matter.
NOTES
[1] A decree was handed down by this Court on August 30, 1988, 531 So.2d 255, affirming the judgment of the Court of Appeal for reasons to be later assigned.
[1] A consistent argument would maintain Wingerter's right to serve until age 80, since that was the mandatory retirement age when he was first elected.
[2] LSA-R.S. 13:30 allows a judge to continue in office until he accrues 20 years or until he turns 80.
[1] "Any judge of the Supreme Court, Courts of Appeal, or District Courts may retire on two-thirds pay when he shall have reached the age of seventy years, and shall have served continuously as a judge of a court of record for twenty years immediately preceding the date of retirement; provided, all judges hereafter elected shall retire on reaching the age of seventy-five years, but shall not receive pay thereafter, unless they shall have served for the required length of time." La. Const. Art. VII, § 8 (1921). (emphasis added)
[2] "Any judge of the Supreme Court, Courts of Appeal, or District Courts, may retire on two-thirds pay when he shall have reached the age of seventy years, and shall have served continously as a judge of a court of record for twenty years immediately preceding the date of retirement; provided, all judges hereafter elected shall retire on reaching the age of seventy-five years, but such judges shall, nevertheless, continue to serve, unless physically or mentally incapacitated, until their successors shall have been duly elected and qualified; such election to be held at the next general judicial or congressional election following the date when such judges shall have attained the age of seventy-five years. Such judges shall not receive pay after retirement unless they shall have served as judges of courts of record for the required length of time." La. Const. Art. VII, § 8 (1921), as amended in 1928. (emphasis added)
[3] "Any Judge of the Supreme Court, Courts of Appeal or District Courts, may retire on two-thirds pay when he shall have reached the age of seventy years, and shall have served continuously as a Judge of a court of record for twenty years immediately preceding the date of retirement; provided, all judges hereafter elected or presently serving shall retire on reaching the age of eighty years, but such judges shall, nevertheless, continue to serve, unless physically or mentally incapacitated, until their successors shall have been duly elected and qualified; such election to be held at the next general judicial or congressional election following the date when such judges shall have attained the age of eighty years. Such judges shall not receive pay after retirement unless they shall have served as judges of courts of record for the required length of time." La. Const. Art. VII, § 8, as amended in 1936. (emphasis added)
[4] "Any judge of the Supreme Court, Courts of Appeal, including the Court of Appeal for the Parish of Orleans, District Courts, including the Civil and Criminal District Courts for the Parish of Orleans, City Courts, if said Court is a Court of Record, and Juvenile Courts, may retire on two-thirds pay when he shall have served continuously as a Judge of a Court of Record for twenty (20) years immediately preceding the date of retirement and shall have reached the age of sixty-five (65) years. Any of the said judges may retire on two-thirds pay, when he shall have served continuously as a Judge of a Court of Record for fifteen (15) years immediately preceding the date of retirement and shall have reached age of seventy (70) years. Any of the said judges, upon completing more than twenty-three (23) years of continuous service as a Judge of a Court of Record, may, irrespective of his attained age, retire on two-thirds pay.

"Any judge hereafter elected shall retire, and any judge presently serving shall retire, on reaching the age of eighty (80) and, if he has served continuously for twenty years as a Judge of a Court of Record immediately preceding his retirement, he shall receive full pay for life." La. Const. Art. VII, § 8 (1921), as amended in 1938. (emphasis added)
[5] "(a) The provisions of this section shall apply to judges of the Supreme Court, the Courts of Appeal, District Courts, including the Civil and Criminal District Courts for the Parish of Orleans, City Courts, Municipal Courts and Traffic Courts which are courts of record, and Juvenile and Family Courts.

"The term `judge' as used hereinafter in this section, means a judge of one of the courts to which this section is applicable.
"(b) Every judge shall retire upon reaching the age of 75 years. If he has served as judge of a court of record for 20 years, he shall receive full pay for life.
"However, any judge now serving who, on attaining the age of seventy five years, has served less than twenty years, may remain in the service until he has served for twenty years or until he has attained the age of eighty years, whichever shall occur first and shall then retire. If he has served for twenty years he shall receive full pay for life and if he has served for less than twenty years he shall receive that proportion of his pay which the number of years served on a court of record bears to twenty.
"(c) Any judge may retire upon reaching the age of 70 years. If he has served as judge of a court of record for 20 years, he shall receive full pay for life. If he has served less than 20 years he shall receive that proportion of his pay which the number of years served on a court of record bears to 20.
"Any judge, upon completing more than 23 years of service as a judge of a court of record, may, irrespective of his attained age, retire on two-thirds pay.
"Any judge may retire on two-thirds pay when he shall have served as a Judge of a Court of Record for twenty (20) years and shall have reached the age of sixty-five (65) years.
"Any appellate judge may retire upon reaching the age of 65 years and receive full pay for life if he has served continuously as a judge for 25 years." La. Const. Art. VII, § 8, as amended in 1960. (emphasis added)
[6] The provisions of La. Const. art. VII, § 8 (1921) were continued as statutes, which eventually became La.R.S. 13:30. See La. Const. art. XIV, § 16.
[7] Both the Gravel amendment and the Kean amendment included similar provisions, as did the version of Section 23 proposed by the Judiciary Committee.
[8] Therefore, a judge who was in office at the time of the effective date of the 1974 Constitution and was sixty-nine years old with eighteen years of service could serve beyond his seventieth birthday until he attained twenty years of service. On the other hand, a judge who was in office at the time of the effective date of the 1974 Constitution and was sixty-nine years old with five years of service could serve until age seventy-five (or possibly eighty). Finally, a judge who was in office at the time of the effective date of the 1974 Constitution and was seventy-one years of age with twenty years of service was required to retire (at least at the end of the term he was then serving).
[9] I was not on the court at the time of the Small decision, but I perceive a serious problem when the Judiciary Commission is allowed to be the final arbiter of questions of constitutional interpretation.

Admittedly, the Constitutional Convention delegates may have concluded that it was desirable to require citizens to bring complaints about misconduct by judges to an independent commission in an initially confidential proceeding, rather than to invoke directly the original jurisdiction of a court. However, only the judge has a right to seek review of a decision by the Judiciary Commission under the present procedure. Thus, when a citizen complains about judicial misconduct which consists of refusing to comply with a constitutional requirement such as mandatory retirement and the interpretation of the constitution is subject to serious dispute, a Commission decision in favor of the judge is an unreviewable determination. In my opinion this is a poor procedure for interpreting important constitutional issues.
Perhaps this problem could be rectified by granting the Judiciary Commission the authority to certify a question of law to this court during the course of a disciplinary proceeding against a judge. Of course, this court could decline to accept certification in any case, but the acceptance of certification in a particular case would permit this court to interpret the pertinent constitutional or statutory provision, while according the Judiciary Commission with the discretion to find the facts and to apply this court's definitive statement of law.
[10] A minimum age limitation was contained in the 1913 Constitution. La. Const. art. 86, art. 118, § 1 (1913).