567 So.2d 63 (1990)
Felicia Toney WILLIAMS
v.
Alwine Mulhearn RAGLAND and Edna Bishop Brock, Clerk of the Sixth Judicial District, Parish of East Carroll, and member of the East Carroll Parish Board of Election Supervisors.
No. 90-C-1784.
Supreme Court of Louisiana.
September 6, 1990.
Rehearing Denied September 6, 1990.[*]
Concurring Opinion September 25, 1990.
Dissenting Opinion September 26, 1990.
*64 M. Junior Williams, Tallulah, for Felicia Toney Williams, plaintiff-respondent.
LeRoy Smith, Tallulah, for Alwine Mulhearn Ragland, et al., defendants-applicants.
Mack E. Barham, Robert E. Arceneaux, and Gail N. Wise, Barham Law Firm, New Orleans, for Alwine Mulhearn Ragland, et al., defendant-applicant.
Concurring Opinion of Justice Dennis September 25, 1990.
Dissenting Opinion of Justice Lemmon September 26, 1990.
SHORTESS, Justice Pro Tem.
On August 9, 1990, 567 So.2d 63, we entered judgment in this matter reversing the court of appeal and stated that reasons in support would issue in due course. Following are those reasons:
Suit was brought by Felicia Toney Williams (plaintiff), to disqualify Alwine Mulhearn Ragland (defendant) in her candidacy for re-election as judge of the Sixth Judicial District Court, Parishes of Madison, Tensas and East Carroll, on the basis of age. Defendant was born July 28, 1913, was first sworn in as a judge of the Sixth Judicial District on October 14, 1974, and has served on that court continuously since. She has served for sixteen years and is, at present, seventy-seven years old. Plaintiff is the only other candidate for the position.
Defendant took office under the Constitution of 1921, which provided, in pertinent part:
Every judge shall retire upon reaching the age of 75 years ... [h]owever any judge now serving who, on attaining the age of seventy-five years, has served less than twenty years, may remain ... until he has served for twenty years or until he has attained the age of eighty years, whichever shall occur first....
LSA-Const. Art. 7 § 8 (1921) (as amended by 1960 La.Acts No. 592).
The issue before us is the meaning of the words "now serving" as quoted above. Plaintiff argues that "now serving" can only mean serving in 1960, the year this language was placed in the constitution, because it was intended to preserve to those judges then in office the right, afforded under the pre-amendment language, to serve until the age of eighty. Prior to the 1960 amendment, Article 7, § 8 read, in pertinent part:
Any judge hereafter elected shall retire, and any judge presently serving shall retire, on reaching the age of eighty (80) years....
Louisiana Constitution of 1921 Art. 7 § 8 (as amended through 1955).
Plaintiff cites Giepert v. Wingerter, 531 So.2d 754 (La.1988) as dispositive of the issue. In Giepert we were presented with the question whether the mandatory retirement provision of the 1974 Constitution (70 years) would apply to a judge who first assumed office under the Constitution of 1921. We determined that the retirement provisions of the constitution under which judicial office was first assumed were controlling.[1]Id. at 756. We based this decision on the proviso in the 1974 Constitution which preserved the "retirement benefits and judicial service rights" of those judges in office upon its effective date (January 1, 1975). Id., citing LSA-Const. Art. 5 § 23. Plaintiff relies on dicta in Giepert which suggests that the language "now serving," at present, actually means "then serving." *65 See Giepert, 531 So.2d at 756 ("[t]he 1960 amendment did not except judges then in office from its scope, but it did permit sitting judges to continue to serve until age 80 or until they had achieved 20 years of service, whichever came first") (emphasis added).
Defendant relies on dicta from our decision in In re Levy, 427 So.2d 844 (La.1983), which suggested that the right under the 1921 Constitution to serve beyond seventy-five years of age if needed to complete twenty years of service was not conditioned upon having been in office prior to the 1960 amendment. Id. at 846 ("[t]he retirement provision in effect in the Constitution of 1921 when Judge Levy was elected and took office provided that `[e]very judge shall retire upon reaching the age of 75 years.' ... [i]f a judge reached seventy-five with less than twenty years service, he could serve until eighty or until he acquired twenty years service, whichever came first"). Judge Levy, like defendant herein, assumed office under the Constitution of 1921 as amended in 1960. Implicit in our language in Levy is that the right to serve beyond 75, if twenty years of service has not been reached, is not conditioned upon having been in office in 1960 because Levy was not in office at that time. See Id. at 848 ("Judge Levy's right to retire at the age of eighty was not diminished by [the 1974 Constitution]").
In neither Levy nor Giepert was the issue at bar squarely before us and their respective dicta is irreconcilable; the meaning of "now serving" therefore must be found in the interplay between the two constitutions and the purpose of Article 7 § 8 of the Constitution of 1921.
The word "now" references time; its most common meaning is "at the present timeat this moment." Webster's Third New International Dictionary at 1546 (1971) (unabridged). A closer look at this definition reveals two distinct meanings; while "at the present time" implies a time frame merely relative to past and future, "at this moment" implies a specific point in time. If we were to ascribe this latter meaning to the word, what specific point in time should we choose? The language itself gives us no guidance whatsoever:
[W]ould "now serving" mean at the time the legislature passed the act, or the time the electorate approved it, or the time the constitutional amendment was promulgated and became effective?
Small v. Levy, 355 So.2d 643, 649 (La.App. 4th Cir.) (en banc) (Boutall, J. concurring) writ denied 361 So.2d 450 (1978).
The issue before us implicates not only judicial service rights but retirement benefits; mandatory retirement is only one provision of a retirement scheme in the 1921 Constitution and is a corollary to a directive for the creation of a statutory retirement scheme in the 1974 Constitution. See LSA-Const. Art. 5 § 24 (1974); LSA-Const. Art. 7 § 8 (1921). In Swift v. State, 342 So.2d 191 (La.1977), we observed that pension statutes are to be construed liberally to effectuate their purpose. The same can be said of a pension provision in the constitution. In Swift we were presented with a somewhat similar situation; language in the statute there at issue read:
Any person who has served as the judge of a court of record in this state for a period of at least eighteen years and who has at least three years in the military service in the armed forces ... and who does not, upon the effective date of the section, qualify for retirement benefits... shall be paid a monthly pension equal to two-thirds of [his salary].
LSA-R.S. 13:8. The issue was whether "upon the effective date of the section" applied to all three conditions (18 years of judicial service, three years of military service, and ineligibility for the judicial retirement plan). We held that judges who fulfilled the military service condition but who had not yet served for eighteen years were nonetheless eligible, noting that the adverbial phrase ("upon the effective date....") could have been placed at the beginning of the sentence were it intended to apply to all three conditions. Swift, 342 So.2d at 195. The same reasoning applies a fortiori to the language at bar. In fact, the very phrase at issue in Swift would have easily *66 conveyed the meaning plaintiff would have us ascribe to "now."
It is also of some import that it is a constitution we are interpreting: while statutes are subject to repeated revisions, a constitution is intended as a framework, "a continuing instrument of government," which must endure an indefinite future on a daily basis. See U.S. v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941) ("[w]e read its words, not as we read legislative codes which are subject to continuous revision, but as the revelation of the great purposes which were intended to be achieved by the Constitution as a continuing instrument of government"). See also Brennan, State Constitutions and the Protection of Individual Rights, 90 Harv. L.Rev. 489, 495 (1977) ("[c]onstitutions are not ephemeral documents designed to meet passing occasions. The future is their care, and therefore, in their application, our contemplation cannot be only of what has been but of what may be").
The constitution under which defendant first took her oath of office read, in pertinent part, "any judge now serving ... may remain in the service until he has served for twenty years or until he has attained the age of eighty years." Plaintiff's position would require a reference to matters extraneous to the document to pinpoint a date, and even reference to the act itself is not dispositive. See Small, 355 So.2d 643, 649 (Boutall, J. concurring). We interpret the Article 7, Section 8, language in the 1921 Constitution, "now serving," to include a judge who took office under that language, i.e, prior to January 1, 1975.
Lastly, this suit contests a candidacy for public office. The purpose of the process of election is to provide the electorate with a field of worthy candidates from which to choose. See Nunez v. Plaisance, 196 La. 926, 200 So. 302 (1941). Encouraging qualification is an integral component, and any law regulating this process must be interpreted mindful of this purpose. See Nunez, 200 So. at 304.
The judgment of the court of appeal is reversed. Plaintiff's suit is dismissed at her costs.
Reversed.
WATSON, J., concurs. See reasons assigned in dissent in Levy, 427 So.2d 844 (La.1983).
DENNIS, J., assigns additional concurring reasons.
COLE, J., respectfully dissents, concluding the opinion of the Court of Appeal correctly sets forth the law.
LEMMON, J., dissents and assigns reasons.
DENNIS, Justice, assigning additional concurring reasons.
I join in the decision of the court but write separately to give what I believe are important additional reasons which require the same conclusion.

1.
The right to become a candidate for election to public office is a valuable and fundamental right. Consequently, one desiring to become a candidate at an election must be afforded a reasonable opportunity to qualify as such. Nunez v. Plaisance, 196 La. 926, 200 So. 302 (1941); Campo v. Acosta, 196 La. 935, 200 So. 305 (1941); Perez v. Hurstell, 196 La. 936, 200 So. 305 (1941). The right should not be prohibited or curtailed except by the plainest provisions of law, whether embedded in constitution or statute, and any provision by which this right of the citizen is diminished or impaired ought always to receive a liberal construction in favor of the citizen desiring to exercise the right. See McKinney v. Kaminsky, 340 F.Supp. 289 (N.D.Ala.1972); Callahan v. Morrow, 40 A.D.2d 619, 336 N.Y.S.2d 816 (1972); Lubin v. Parish, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974); Kautenburger v. Jackson, 85 Ariz. 128, 333 P.2d 293 (1958); Fisher v. Taylor, 210 Ark. 380, 196 S.W.2d 217 (1946); City of Miami Beach v. Richard, 173 So.2d 480 (Fla.App.1965); Vieira v. Slaughter, 318 So.2d 490 (Fla.App.1975).
Furthermore, the impact of a candidate eligibility requirement on voters implicates basic rights protected by the First and *67 Fourteenth Amendments. A candidate eligibility rule places burdens on two different, although overlapping kinds of rights the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. Anderson v. Celebrezze, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). Not all restrictions imposed by the states on candidates' eligibility for the ballot impose constitutionally suspect burdens on voters' rights to associate or to choose among candidates. But even when pursuing a legitimate interest, a state may not choose means that unnecessarily restrict constitutionally protected liberty. If the state has open to it a less drastic way of satisfying its legitimate interests, it may not choose a scheme that broadly stifles the exercise of fundamental personal liberties. Anderson v. Celebrezze, supra; Kusper v. Pontikes, 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973).
As the majority opinion ably demonstrates, the words of the 1921 Louisiana Constitution preserving judicial service rights of "any judge now serving who, on attaining the age of seventy-five years, has served less than twenty years", as continued by reference in the 1974 Constitution, are not plain and unambiguous but are susceptible to differing interpretations. Therefore this court is obliged to construe the ambiguous double preservation clause of the 1974 Constitution in a way that least drastically furthers its objective and most fully protects the right of a citizen to become a candidate and the rights of voters to associate for the advancement of political beliefs and to cast their votes effectively. Thus, the majority correctly interprets the 1974 Constitution's preservation of judicial service rights as being applicable to judges "now serving", i.e., judges serving on the effective date of the 1974 Constitution rather than to a narrower class of judicial candidates.
The majority's interpretation of the clause preserving the prior constitution's preservation of judges' service rights is reasonable because of several factors. The clause has been interpreted in exactly the same way previously by this court, albeit in dicta. In re Levy, 427 So.2d 844 (La.1983). This is the manner in which the clause has been interpreted by other reasonable, well respected jurists. Small v. Levy, 355 So.2d 643 (La.App. 4th Cir.1978) (Boutall, J., concurring) (Beer, J., concurring) writ denied, 361 So.2d 450 (La.1978). This interpretation properly treats the judicial service rights guarantee as having been merged into the continuing instrument of fundamental law, rather than as an extraneous, momentary legal precept. A constitutional provision ought to be read as a permanent continuing stipulation unless its text clearly indicates otherwise.
Accordingly, the opinion of the court correctly adopts a sound and fair interpretation of the constitutional language that upholds both the citizen's right to seek public office and the voters' freedom of choice.

2.
This is a suit seeking to disqualify a candidate for the office of judge of a district court on the grounds that the candidate does not possess all of the qualifications for that office. See La.R.S. 18:1401(A). The petition alleges that the candidate is not qualified because she has remained in office beyond the date of her mandatory retirement age. But the Louisiana Constitution clearly does not require that a person comply with either a minimum or maximum age limit in order to run for a judicial office. See Hargrave, The Judicial Article, 37 La.L.Rev. 765, 818 (1977) ("The minimum age requirements of the prior law are deleted * * * ").
It is generally accepted that neither the legislature nor the courts are authorized to change the qualifications of judges prescribed by the constitution. Knobloch v. Democratic Committee, 73 So.2d 433 (La. App. 1st Cir.1954), appeal transferred 73 So.2d 432 (La.1954); Opinion of the Justices, 291 Ala. 581, 285 So.2d 87 (1973); Mississippi County v. Green, 200 Ark. 204, 138 S.W.2d 377 (1940); Buckingham v. State, 35 A.2d 903 (Del.1944); Cook v. *68 O'Niell, 280 Mich. 649, 274 N.W. 445 (1937); Kivett v. Mason, 185 Tenn. 558, 206 S.W.2d 789 (1947); People v. Tauchen, 415 Ill. 91, 112 N.E.2d 94 (1953); State ex rel. Boedigheimer v. Welter, 208 Minn. 338, 293 N.W. 914 (1940).
In Louisiana, the qualifications for the office of a judge of the district court are prescribed by Article V, § 24 of the 1974 Louisiana Constitution:
"A judge of the supreme court, a court of appeal, district court, family court, parish court, or court having solely juvenile jurisdiciton shall have been admitted to the practice of law in this state for at least five years prior to his election, and shall have been domiciled in the respective district, circuit, or parish for the two years preceding election. * * * ".
The qualifications provided by Section 24 are exclusive and the legislature or the courts cannot add to them. Hargrave, The Judicial Article, 37 La.L.Rev. 765, 818 (1977). See Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts Vol. VI, p. 864 ("[T]he qualification should be simply that the attorney be admitted to the practice of law in this state at least five years before his election, that he should be domiciled in the respective circuit or parish for at least two years immediately preceding the election.") When qualifications stated by the Constitution are not meant to be exclusive, the power of the legislature to add them is specifically mentioned. See La. Const. art. V, § 33 pertaining to jurors. ("The legislature may provide additional qualifications.") Such language is not incorporated in Section 24, indicating that the qualifications stated in the section are exclusive. Hargrave, Id. Louisiana has always had judges' qualifications in the constitution and has never included lack of age as a requirement for seeking office. See, e.g., La. Const.1921 Art. VII § 6; Convention Transcripts, supra at p. 864.
Section 23 of Article V sets forth provisions relative to judicial retirement. This section contains (i) a mandate to the legislature to enact a retirement system for judges; (ii) a reservation of retirement benefits and judicial service rights of a judge in office or retired on the effective date of the constitution; and (iii) a mandatory retirement age for judges. There is nothing in these provisions or in the convention debates to indicate that any of these matters should be transposed or read into Section 24 as a qualification for seeking judicial office. See Convention Transcripts, supra p. 836.
Consequently, it is evident that the delegates had no intention that the mandatory retirement age, stated as a retirement provision in Art. V, § 23, be absorbed by osmosis into § 24 as a qualification for running for judicial office. Surely if that had been the delegates' intention they would have said so. The delegates were well apprised of the advancing ages of many of the state's judicial officers, the retirement provisions having been discussed just prior to the qualification section on the same day. See Convention Transcripts, supra, p. 836, 864. Yet, as the court of appeal acknowledges, Section 24, the qualifications provision, "does not contain a minimum or maximum age qualification-for-judge requirement." Williams v. Ragland, 566 So.2d 452 (La.App. 2d Cir.1990).
Nevertheless, the court of appeal took it upon itself to read a maximum age requirement into the constitution as a qualification for office. In doing so the court of appeal obviously attempted to judicially amend the constitution to repair what it perceived to be a flaw in the scheme of electing persons to judicial office. It may be that the failure to make lack of seventy years of age a qualification was an oversight or a mistake. But, it is not an omission that the court of appeal or this court is empowered to correct. If it is a constitutional flaw or oversight, it is clearly a defect that can be cured only by the legislature and the people by the duly ordained amendment process, and not by the courts' judicial fiat.
LEMMON, Justice, dissenting.
Of general and common knowledge is the fact that age often takes it toll on even the keenest of human minds and the healthiest of human bodies. Recognizing this fact, *69 and apparently believing that a maximum age limit was as important and valid a restriction to impose upon judges as was a minimum age or experience level, the drafters of the 1921 Constitution (and of the 1960 amendment) included a provision for mandatory retirement of judges. The purpose of the constitutional provision was to insure that a judge remained as mentally and physically competent during the entire term of office as he or she was when elected. By placing an absolute requirement in the constitution, instead of leaving the decision on competency to be made on a case-by-case determination based on a subjective standard, the drafters declined to place on the judge's colleagues the awesome responsibility of determining whether the judge continues to be competent to serve as he or she advances in age. The constitutional requirement of mandatory retirement at a specified age eliminates the necessity of this determination by requiring all judges, without any subjective determination, to retire at a specified age.[1]
The present case turns on the interpretation of the phrase "now serving" in the 1960 constitutional amendment which lowered the age for mandatory retirement from eighty to seventy-five. If a phrase pertaining to election law is used in the statutes or constitution and is subject to more than one reasonable interpretation, then the court should select the interpretation which permits the party to run for office rather than the one which denies the opportunity to run for office. Therefore, the critical issue is whether the interpretation placed by the majority on the phrase "now serving" is a reasonable one.
In my view the majority's interpretation of the exception in the constitution is not reasonable because that interpretation of the exception makes the rule of the amendment, at the time of adoption, inapplicable to anyone at anytime. If the drafters of the 1960 amendment and the people who voted to adopt the amendment lowering the mandatory retirement age did not intend the exception as a "grandfather clause", but rather intended for the phrase "now serving" in the exception to apply to any judge serving at some then undefined time in the future, then the general rule of the amendment in 1960 would never be applicable to anyone. It is unreasonable to believe that the drafters and the voters intended an exception which made the general rule universally inapplicable and of no effect whatsoever. Only if the exception is interpreted as a "grandfather clause" does the amendment fulfill the evident purpose of the drafters and the voters.
When defendant entered judicial service in 1974, the mandatory retirement age was clearly seventy-five years. Nothing has happened since that time which would entitle her to serve beyond the mandatory retirement age specified in the constitution at the time she entered judicial service. Therefore, she is not qualified to serve, and the court of appeal properly dismissed her candidacy.
NOTES
[*] Hall, J., recused.
[1] It is noted that Judge Wingerter served continuously after first assuming office in 1948.
[1] Defendant did not question whether the constitution was unconstitutional because of age discrimination.